## State of Minnesota vs. Herman Baumhager.

### August 3, 1881.

**Embezzlement of Public Money—Indictment—Evidence.**—The defendant was indicted, tried, and found guilty of the crime of embezzling public moneys in his possession as county treasurer. Held, following *State* v. *Munch*, 22 Minn. 67, that the indictment sufficiently avers the office of the defendant and the character of the funds embezzled. *Also*, the first possession being lawful, the act of embezzlement consists in a certain sense in a mere act of the mind, without any outward and visible trespass, as in the case of ordinary larceny, and that this act of fraudulent appropriation has taken place may be inferred from the conduct of the defendant. Hence, in this case, the facts (which the evidence fairly tended to prove) that defendant having come into possession of an order on the county treasury which he knew that his predecessor had redeemed, but had neglected to mark "paid," falsely marked it as paid and redeemed by himself, and falsely credited himself in the books of his office with the amount as disbursed by himself, and subsequently returned it to the county auditor as paid and redeemed by himself, and fraudulently obtained credit therefor upon the books of the county auditor, constituted sufficient evidence to warrant the jury in finding an actual conversion by defendant of public money to his own use, and therefore is sufficient to sustain the verdict.

Appeal by defendant from a judgment of the district court for Scott county, *Macdonald, J.,* presiding.

*O'Brien & Wilson,* for appellant.

*Wm. J. Hahn,* Attorney General, for the State.

MITCHELL, J. The defendant was indicted for the crime of embezzlement of public moneys entrusted to him as county treasurer of Scott county. Having been convicted and sentenced, he now appeals from the judgment, and assigns three grounds of error: *First,* insufficiency of the indictment; *second,* errors in the rulings of the court during the trial; and, *third,* insufficiency of the evidence to sustain the verdict.

· The objection to the indictment is that it does not sufficiently aver the office of defendant or the character of the funds taken. The averments of the indictment in these regards are substantially the same as those contained in the indictment in the case of *State* v. *Munch,* 22 Minn. 67, which was held sufficient by this court. We consider the indictment good.

The only exception taken by the defendant upon the trial which we deem necessary to notice, (except that to the charge of the court,) is that to the ruling of the court excluding his offer to show, by cross-examination of D. L. How, a witness for the state, that the witness, in his official capacity as one of the county commissioners, visited the office of the defendant, the county treasurer, on the 13th of November, 1880, and on examination of that office there was found to be a surplus of assets of some $250 over and above the amount with which defendant was charged on the county auditor's books. The objection made to this by the state was that it was not cross-examination. The state had examined the witness solely as to the fact that a certain county order was in the treasurer's office on the 9th of June preceding. The offer would not have been legitimate cross-examination, and therefore the court properly excluded it.

The defendant also excepted to that part of the charge of the court to the jury, defining what would be conversion or evidence of conversion of public funds. This really raises, in another form, the same question raised by the objection that the evidence was insufficient to sustain the verdict, and hence both will be considered together.

Upon the trial the state produced evidence proving, or fairly tending to prove, the following facts: During the months of May and June, and up to the 22nd of the latter month, one John J. Ring was treasurer of the county, and defendant his deputy; that after the first week of June, Ring was very little in the office, the business being principally transacted by defendant as his deputy. While Ring was thus treasurer he kept a book in the office, showing all orders redeemed by him. On the 5th of June a county order, bearing date June 1st, for $53.25, was duly issued by the county to one Mathias Meyer, who presented the order, on or about the same day, at the county treasurer's office for payment, when it was paid and taken up by the county treasurer or his deputy, but not marked paid or redeemed, as required by statute. This order was, June 9th, still in the office of the county treasurer, among the papers and vouchers of the office, and not marked redeemed. Ring ceased to be county treasurer and vacated the office June 21st, never having sold the order or delivered it to any one, or taken it out of the office, or returned it to the county auditor as redeemed by him. Defendant was appointed Ring's successor, qualified, and entered upon the duties of the office of county treasurer, and took possession of the office June 25th.

On the 12th of November following, defendant marked this order on its face as redeemed by himself on that day, and made an entry in the book kept in the office for the purpose of showing the amounts of money received and paid out by the county treasurer, crediting himself with having paid out that day the sum of $53.25, by redeeming the order referred to. On the 30th of November following, the defendant returned this order, with others, to the county auditor, as orders redeemed by him, for the purpose of obtaining credit therefor on the auditor's books; and the county auditor gave him credit for it on the books of the office in which he is required by law to keep an account current with the treasurer of the county. It does not appear that there was any settlement made by the county auditor with the defendant as county treasurer at that time, except as above stated. This order had never been returned to the auditor by any one else, or any credit therefor given to any one else. At the time this order was thus returned by defendant, and credit obtained by him therefor,

there was in his hands, of county funds, which he had received as county treasurer, the sum of over $5,000. The state offered no other evidence of an actual conversion of public funds by defendant, nor that there was a shortage or general deficiency of defendant's accounts as county treasurer. The defendant offered no evidence in his own behalf whatever.

The question now is, would the above facts justify the jury in finding that defendant actually converted to his own use $53.25 of the public funds in his hands as treasurer? The contention of defendant is that these facts, at most, show an attempt or design to do so, but do not establish the actual consummation of the offence, in the absence of other evidence tending to show that defendant carried out this purpose, by actually taking out of the county treasury an amount of money, and appropriating it to his own use. The court below charged the jury on this point as follows, which is the portion of the charge excepted to: "If you come to the conclusion, from the testimony, that this order did not come into the possession of the defendant under such circumstances that he had a right and authority to pay it and redeem it, but that, on the contrary, it was paid prior to his going into office, of which facts the defendant had knowledge, enabling him to know that it was not such paper as he could use or redeem; then, I say, if you should find from the evidence that the defendant, knowing that he could not pay this order or warrant, or knowing that he had no right to use it, wilfully and with criminal intent took it and falsely indorsed upon it that it was redeemed by him as county treasurer, and then falsely and fraudulently, and with criminal intent, returned it to the county auditor as redeemed by him, and with like intent procured credit for the amount thereof to be given to him by the county auditor, and thereby reduced and lessened the amount charged against him, and which he was to pay and account for to that extent,—if you find that he has done all this, for the criminal purpose of getting credit for money which he has not in fact disbursed or paid out, then you are warranted in finding that he has embezzled the moneys in the county treasury for the amount which he has thus wrongfully procured credit, and allowed to him.

"Before the defendant can be convicted, the jury must be satisfied from the evidence that the defendant unlawfully and feloniously, with intent to defraud the county, took and converted to his own use the sum of money charged in the indictment, or some part of it. To convict, the jury must find that some of the money was actually converted by the defendant to his own use. The entry on his books, or upon any order, and no mistake in making such entry, would not enable the jury to convict, unless, in addition to such entry, the jury should be satisfied that the actual money, or some part of it, was actually converted." The court had also instructed the jury that the defendant must be presumed innocent until his guilt is proved beyond reasonable doubt, and that this presumption attends every question and fact in the case, and remains until overcome by such evidence as convinces the jury beyond a reasonable doubt.

We think the charge of the court was correct, and sufficiently favorable to the defendant. It is to the effect that an entry in defendant's books, or upon the order, would not enable them to convict, unless they were also satisfied that the actual money, or some part of it, was actually converted; that to convict they must find that some of the money was actually converted by defendant to his own use.

The charges in substance were that *actual conversion* was necessary to render defendant guilty, but that if they find that he did the acts named with a fraudulent and criminal intent, it was evidence which would warrant them in finding an actual conversion, provided it satisfied them of the fact beyond reasonable doubt. He does not instruct them that these acts *per se* constitute conversion, but simply evidence from which a jury might find that fact. This is true unless the evidence be insufficient to sustain such a finding. Now, the state of facts made to appear was that presumably defendant came into possession of this order as successor to Ring, finding it in the office when he took possession. Knowing that Ring had redeemed and paid it, but had neglected to mark it redeemed, he must also have known that he had no right to any credit for it, not having paid it. He subsequently falsely marks it paid and redeemed by himself, and falsely credits himself on the official books in his office with the

amount of the order as paid out by himself. He then returns it to the county auditor as redeemed by himself, for the purpose of obtaining credit for it, and in fact obtains credit for it on the auditor's books, thus reducing the amount for which he was chargeable or indebted to the county, This is done at a time when he has in his hands a large amount of public funds for which, in law, he stands debtor to the county. In the absence of any explanation, there can have been reasonably but one purpose for such conduct, viz., to obtain a false credit, so as to enable him to appropriate an equal amount of the public funds to his own use. And in the absence of any such explanation or rebutting evidence tending to show that he had not in fact made such appropriation, we think it would fully warrant the inference that this intent was carried out, without the state being required, in the first instance, to go into the general condition of his accounts, and show that there was a deficiency to that amount in the amount of funds in his hands as treasurer.

The distinction must be kept in view between the offence and the evidence of it. The first possession being lawful, the act of embezzlement consists, in a certain sense, in a mere act of the mind, without any outward and visible trespass, as in the case of ordinary larceny. That this mental act of fraudulent appropriation has taken place has to be inferred from the conduct of the defendant. Roscoe's Cr. Ev. 453. Hence, the wilful making of false entries is a kind of proof commonly relied on and held sufficient to make out an embezzlement. 2 Bish. Cr. Law, § 376. The usual evidence given of embezzlement is that, having received the money, the defendant denied the receipt of it, or did not account for it when he ought, or accounted for other moneys received by him at the same time or afterwards, and not for it, or rendered a false account, or practised some other deceit, from which the jury may fairly infer that the defendant either actually disposed of the money to his own use, or withheld it with intent to do so and to defraud the owner. 2 Arch. Cr. Pr. and Plead. 578. Thus, a clerk receiving money on his master's account made a false entry in his master's book of a less amount, with a fraudulent intent to conceal the fact of his having received the balance of the sum. This was held sufficient to make

out an embezzlement. *Rex* v. *Hall*, 3 Starkie, 67. None of these acts *per se* constitute a conversion, but they are evidence from which a conversion may be inferred. So, in this case, the defendant already had possession of the funds. His false entry on the order and in his books, and his obtaining a false credit on the auditor's books, are acts indicating an appropriation to his own use of just that amount of public money, and from which an actual appropriation may be inferred. The only money in his hands which could be claimed to belong to the county was such sum as, by the books in the auditor's office, he was shown to have received, but not accounted for or paid over. By procuring this credit by these false and fraudulent acts, he reduced the amount of his indebtedness on the auditor's books by just that amount. We, therefore, think that there was evidence in the case from which the jury were warranted in finding a conversion by defendant to his own use of public funds, and that it is sufficient to sustain the verdict.

Judgment affirmed, and ordered carried into execution.