STATE OF IOWA, Appellee, v. F. W. BROOKS, Appellant.

1. **Indictment** : CLERICAL ERROR: CORRECTION ON MOTION. Where in an indictment the offense charged was alleged in one place to have been committed at a date subsequent to the finding of the indictment, but elsewhere the offense was sufficiently charged as having been committed on a date that was possible and certain, *held*, that the first date was a mere clerical error which might be corrected on motion, after the plea of the defendant, under the provisions of section 4538 of the Code.

2. **Conversion** : EVIDENCE. The defendant was charged with having received as agent for one H. a sum of money, and with having converted the same to his own use. It appeared, from competent evidence, that the defendant had received, on account of a mortgage on lands executed by H., the sum of twelve hundred dollars from the mortagee to be paid to H., or upon liens previously existing against the property; that out of said sum he paid to one C. the sum of five hundred and eighty-two dollars, on account of his personal indebtedness to C.'s daughter, and that no part of the balance had been paid to H., or to any one on his account. *Held*, that testimony by H. that he had been served with notice of the commencement of suit on said mortgage, and that none of the prior liens upon the property had been paid, nor had the defendant paid any of said money to, nor for him, conceding it to be secondary, was without prejudice to the defendant.

3. ———: ———: PROOF OF AGENCY. It being a question in issue whether the defendant was the agent for H. in said transaction, it was competent to inquire of the mortgagee whether the defendant was agent for him.

4. ———: ———. Testimony by H. that he had been put to an expense of seventy or eighty dollars by reason of the defendant's failure to pay over the money received by him, though immaterial, *held*, to be without prejudice to the defendant.

5. ———: ———. The money in question was received by the defendant in the form of a draft, which was cashed by the local bank. The cashier who drew the draft to the defendant, having identified it, and stated that it was returned to his bank upon a date named, *held*, that an inquiry whether the draft, by its marks, had been paid and canceled, was not objectionable as not calling for the best evidence.

6, ———: ———. The draft sent to the defendant, *held*, to be admissible in evidence as showing the means whereby the defendant acquired possession of the money.

7. ———: CONSTRUCTION OF STATUTE: INSTRUCTION TO JURY. Under chapter 30 of Acts of the Twenty-first General Assembly, extending the offense of embezzlement to any attorney-at-law, collector or other person who in any manner receives or collects money for the use of and belonging to another, *held,* that an instruction to the jury that the defendant might be convicted if he received or collected money for the use *and benefit* of H. was not improper as enlarging the scope of the statute.

8. ———: ———: ———. One who has converted to his own use money received for the use of another is guilty of embezzlement, though there was no agreement as to compensation for his services in such transaction.

9. ———: ———: ———. Although the defendant received the money in question from the mortgagees for the payment of incumbrances on H.'s land, and the incumbrances amounted to more than the money received, *held,* that he nevertheless received the money for the use of H.

*Appeal from Monona District Court.*—HON. G. W. WAKEFIELD, Judge.

FRIDAY, MAY 20, 1892.

FEBRUARY 13, 1890, an indictment was returned charging the defendant with the crime of larceny, as defined in chapter 30 of Acts of the Twenty-first General Assembly, to which he pleaded not guilty, February 15, 1890, and upon which he was tried by a jury April 28, 1890, and convicted and sentenced to imprisonment in the penitentiary, from which he appeals.—*Affirmed.*

*J. A. Pritchard and Charles Mackenzie,* for appellant.

*John Y. Stone,* Attorney General, and *Thomas A. Cheshire,* for the State.

GIVEN. J.—I. When the case was called for trial the following proceedings were had: "The plaintiff moves the court, in the case of the State of Iowa *v.* F. W. Brooks, to correct that portion in the beginning of the indictment—the same reads as it now stands, 'The said F. W. Brooks, on or

1. INDICTMENT: clerical error: correction on motion.

about the fifteenth day of November, 1890'—so that the same shall read as follows: 'That the said F. W. Brooks, on or about the fifteenth day of November, 1888.' The defendant objects, for the reason that it does not appear that the mistake is a clerical error, and for the reason that the defendant has pleaded to the indictment as it now is, and for the reason that it is not such a mistake as the state can correct on oral motion, for the reason that a correction of the same would greatly prejudice the defendant, if made at this time; and for the further reason that the defendant would not have an opportunity to plead to the indictment as corrected." The objection was overruled, and the defendant then and there excepted.

That stating the year as 1890 was a clerical error is not only apparent from the fact that it was a date subsequent to the finding of the indictment and to the trial, but from other allegations of dates appearing in the indictment. Following that statement of the date, it charges that defendant, as agent of C. L. Hewitt, received twelve hundred dollars on or about the fifteenth day of November, 1888; and that "on or about the fifteenth day of November, 1888," he converted the same to his own use. It is not only apparent that the date "1890" was an impossible date and a clerical error, but that, omitting that date, still the offense is charged to have been committed at a time possible and certain, namely, "on or about the fifteenth day of November, 1888." Code, section 4538, requires that we "must examine the record, and without regard to technical errors or defects which do not affect the substantial rights of the parties, render such judgment on the record as the law demands." "A mere clerical error, which can be discovered by a casual reading of the indictment itself, will not render it fatally defective." *State v. Crawford*, 66 Iowa, 318; *State v. Gurlock*, 14 Iowa, 444; *State v. Emeigh*, 18 Iowa, 122; *State v. White*, 32 Iowa, 17.

This being a mere clerical error, apparent upon the face of the indictment, the defendant was not prejudiced by allowing the correction. "Where a defective averment may, without detriment to the indictment, be wholly omitted, it may be considered as surplusage, and disregarded. *State v. Freeman*, 8 Iowa, 428; *State v. Ormiston*, 66 Iowa, 143; *State v. Ansaleme*, 15 Iowa, 44; *State v. Goode*, 68 Iowa, 593. We have seen that, omitting this evidently defective averment, the indictment charges the crime to have been committed at a possible and definite time. There is a conflict in the authorities as to whether an allegation of an impossible date may be corrected, but there being an allegation of a possible date, and the erroneous allegation being merely by a clerical error and surplusage, we do not think this question is involved in this case. We think it may be said in this case, as was said in *State v. Crawford*, 66 Iowa, 318, 320, that "a mere casual reading of this indictment shows that this merely clerical error does not affect the charge, and that there is sufficient matter alleged to indicate clearly the offense charged." The defendant was not prejudiced in any substantial right by permitting the state to declare upon the record the date at which it would claim the offense to have been committed.

II. The following statement of the facts, with such as are hereafter mentioned, will be sufficient for a correct understanding of the questions presented: The appellant was in business at Mapleton, and engaged in procuring loans. In September, 1888, C. L. Hewitt applied for a loan of twelve hundred dollars on a certain quarter section of land, and was informed by the appellant that he thought he could get it for him. Thereafter Mr. Hewitt signed an application for the loan made out by one Prichard on the blank used by Cook & Dodge of Davenport, Iowa, which application

was sent to the appellant, and by him to Cook & Dodge. October 11, 1888, Cook & Dodge sent notes and mortgage to the appellant for Hewitt to execute; which being executed by Hewitt, and returned to them by the appellant with an abstract of title, Cook & Dodge sent to the appellant a draft, payable to his order, for eleven hundred and ninety-nine dollars and forty cents, the receipt whereof he acknowledged "for the Hewitt loan," November 15, 1888. This draft was drawn by the Citizens' National Bank of Davenport on Merchants' National Bank of Chicago, November 13, 1888. On November 15, 1888, the appellant and one J. H. Cook called at the Onawa State Bank at Onawa, Monona county, Iowa, when and where the appellant presented, indorsed, and had said draft cashed, the bank paying him "the full face amount." Mr. Cook was there representing his daughter, to whom the appellant was indebted in the sum of five hundred and eighty-two dollars. This sum was paid out of the amount coming to the appellant upon the draft, and by direction of Cook, with the consent of the appellant, deposited to the credit of one McMillan, the appellant receiving the balance. This draft was returned to the Citizens' National Bank of Davenport as paid by the Chicago bank. It does not appear what the appellant did with the balance of the money, other than the five hundred and eighty-two dollars; but it does appear that, though demanded so to do, he never paid any part of the money to Mr. Hewitt, or to any person for his use or benefit, and that he never returned any part of it to Cook & Dodge. Under date of March 2, 1889, he wrote to Mr. Hewitt that he had heard from Dodge in regard to the loan; that he would send him papers in a short time; that it would take a week or more to get them; and that he would like to have it arranged so he could place the loan. The land to be mortgaged was incumbered, and Hewitt sought

the loan to pay the incumbrances.　There is a dispute whether the amount of the loan was sufficient to do so. It is evident that Cook & Dodge and Hewitt intended that the appellant should pay the existing liens out of the proceeds of the draft, so as to leave Cook & Dodge's mortgage the first lien.　Under date March 25, 1889, Cook & Dodge wrote to the appellant, stating that they had a letter from Hewitt stating that he had not received the money.　They say "the reason probably is that the amount of the loan, twelve hundred dollars, is not sufficient to pay off the prior claims.　If this is the case, you had better return the money."　It is evident that from the receipt of the draft in November, 1888, to April, 1889, the appellant was concealing the fact of its receipt from Mr. Hewitt, and conveying the impression to Cook & Dodge that there was something in the way of completing the transaction; while the fact was he had used at least part of the money, and was making no effort to complete it.

Mr. Hewitt was permitted to testify, against the appellant's objection, "that he was served with summons at the last term of court, demanding of him thirteen hundred dollars on this mortgage," and that the appellant had not paid any of the liens, or paid any money to or for him, since he gave the mortgage.　It is contended this evidence was secondary.　Concede this, and yet it was without prejudice.　There was no claim that the money had been returned to Cook & Dodge or the mortgage and notes of Hewitt otherwise satisfied, or that any part of the money had been paid to or for Hewitt.　The only tendency of this evidence was to show conversion, and, as the evidence showing that the appellant did convert the five hundred and eighty-two dollars to his own use stands uncontradicted and unquestioned, the admission of this, though secondary, could not have prejudiced the appellant.　The appellant complains that Mr. Cook

2. CONVERSION: evidence.

was permitted to testify that he (the appellant) was indebted to Mr. Cook's daughter. That was stated as a part of the conversation and transaction in the bank at the time the five hundred and eighty-two dollars was converted, and was competent. It was connected with the transaction for which the defendant was on trial, namely, the conversion.

III. Mr. Dodge was asked whether in the matter of this loan they had the defendant employed as agent,

3. ——: ——:
proof of
agency.

to which he answered, "We did not." To this the defendant objected as calling for a conclusion, which objection was overruled. It is a question directly in issue in this case whether the appellant was agent for Hewitt, but not whether he was for Cook & Dodge. Whether he was for Cook & Dodge only arises incidentally, in as far as it will go to show whether he was or not for Hewitt. It is of frequent occurrence that a witness is permitted to state as a fact that which is deduced from other facts, or what may be called a conclusion. In such case it is the privilege of the party not satisfied with the answer to call out the facts upon which it is based, and ask the jury to find thereon. If, as in this case, both parties rest upon the answer without calling for the facts upon which it is based, it was properly left with the jury.

IV. Hewitt stated, over the appellant's objection, that he had been put to seventy or eighty dollars extra

4. ——: ——.

expense by reason of the appellant's failure to furnish the money. We agree with the appellant's counsel that this did not tend to prove or disprove the charge, and was immaterial; but we fail to discern wherein it was in the least prejudicial to the defendant.

V. Mr. Carr, the cashier who drew the draft to the appellant, having identified it and stated that it was

returned to his bank January 27, 1890, was asked: "Has the draft, by its marks, been paid and canceled?" The defendant objected as secondary, and complains that his objection was over-ruled. He contends that payment could only be proven by calling the cashier or officer of the bank at Chicago, who made the payment. To thus apply the rule requiring the best evidence would seriously hinder commercial transactions. Primary evidence that a draft has been paid is that it bears the usual marks of payment, and has been returned to the drawer.

VI. The appellant objected to the draft being admitted in evidence, upon the ground that he is charged with the larceny of money, and not of a draft. The charge is of larceny of money by embezzling it. The draft was simply the means by which he acquired possession of the money. The several letters admitted in evidence were sufficiently identified. We discover no error prejudicial to the defendant in the admission of testimony.

VII. Under the law as it was prior to the enactment of chapter 30 of Laws of the Twenty-first General Assembly, it was only officers, agents, clerks, or servants who were punishable for larceny by embezzlement. Code, section 3909. This section, as amended in said chapter 30, is made to apply to "any attorney-at-law, collector, or other person who in any manner receives or collects money or any other property for the use of and belonging to another," and who embezzles the same without the consent of the owner of the money or goods collected, which have come to his possession or under his care in any manner whatsoever. The court in its charge stated accurately the law as expressed in said chapter 30, and instructed the jury that the defendant might be convicted thereunder if they found the proof so warranted, "either in the capacity of agent

of C. L. Hewitt, as alleged, or in the capacity of the person who received or collected money for the use and benefit of said C. L. Hewitt, as alleged. It is not necessary that both capacities should be proven. That is to say, it must appear that the money came into the defendant's hands by virtue of his employment as agent of C. L. Hewitt, or that he received it or collected the money in question for the use and benefit of said C. L. Hewitt, and belonging to him." The appellant complains of the use of the words "and benefit" in this instruction, contending that it enlarges beyond the legitimate scope of the statute; that it includes the thought of receiving the money and expending it for Mr. Hewitt. The addition of the words "and benefit" did not change the evident meaning of the instruction. The precise words of the statute were previously used, and the expression, "for the use and benefit," does not change the meaning of the instruction. It would not be understood differently from what it would have been had the words "and benefit" been omitted. If the appellant received money belonging to Hewitt for his use, it follows that it was for his benefit.

The appellant complains of the refusal of the court to submit to the jury his claim that the defendant was the agent of Cook & Dodge, and not the agent of C. L. Hewitt. The court did submit the question whether he was the agent of C. L. Hewitt. As already stated, it was not an issue in the case whether he was agent of Cook & Dodge. That inquiry was collateral to the question of his agency for Mr. Hewitt, and the instruction given left that claim of the appellant, and all the testimony in respect to it, to have its full force in determining whether he was agent for Mr. Hewitt.

VIII. The appellant complains of the refusal to give certain instructions asked. The first is to the effect 8. —: —: —. that, to constitute an agency, there must be a consideration or compensation to the

agent; and it is argued therefrom that there must be a compensation due to one who receives or collects money or property for the use of and belonging to another. Ordinarily, if not uniformly, the relation of agent would exist where the person receiving was entitled to compensation from the person for whom he received. One of the purposes of the amendment is to make those who receive property for the use of and belonging to another liable for its embezzlement, even though they received without right to compensation. The second instruction asked is to the effect that, if the jury found that the appellant was the agent of Cook & Dodge, and not of Hewitt, they could not convict. They were told, in effect, that they could not convict unless they found that he was the agent of Hewitt, or that he received and collected the money for the use of Hewitt, and that it belonged to him. As already stated, it was not in issue whether he was the agent for Cook & Dodge or not.

IX.   Other instructions refused were to the effect that, if the appellant received the draft with instructions from Cook & Dodge to pay incumbrances, and the incumbrances were more than the amount of the draft, he would be the agent of Cook & Dodge for the purpose of paying the incumbrances, and could not be convicted for failing to pay the amount of the draft, or any part of it, to Hewitt. Whether the appellant, thus instructed by Cook & Dodge, could be the agent for both parties, we need not determine, as those instructions were properly refused, because they ignored the liability of the defendant if he received the money for the use of and belonging to Hewitt. That the appellant was to pay it on the incumbrances did not render it any the less the money of Hewitt, nor as being received for his use. We think there was no error in refusing those instructions.

X.   Counsel argued  at some length to show that
there was no  such  demand  upon  the  appellant  to pay
9. —: —: —. the  money  to  Hewitt  as  is  required  to
establish the offense.   The evidence leaves
no doubt but that the appellant was  frequently pressed
to  pay the money,  as  it  was his  duty to do.   It is
apparent that from the time  he received it at the  bank
in Onawa until  the month of April following,  he was
avoiding Mr. Hewitt,  and concealing  the fact of the
receipt of the money.   If demand was necessary, it is
evident that it was repeatedly made.   It is argued that,
as the appellant was to  apply the money in satisfaction
of the liens upon the land,  it was  not to be paid to,
and did not belong to Mr. Hewitt, and that no demands
were made by the lienholders.   The demands were that
the appellant should pay over  the money, as it was his
duty  to do,  and  he  failed  to so pay.   It belonged to
Hewitt,  and  was  received  for  his  use,  even though
every farthing was to go to the satisfaction of the liens.
We may  add  that,  as  the  only  purpose  of proving a
demand  is  to  show  conversion,  where  that has been
shown,  as in  this case,  by  the application of the five
hundred  and  eighty-two  dollars  to the payment of his
own  debt,  this evidence  might  have  been  dispensed
with,  and yet its  admission  was  proper to fix the con-
version of the balance of the twelve  hundred dollars.

We have  carefully considered  all the  points sug-
gested by the record or  urged in  argument, and reach
the conclusion that the  judgment of the district court
should be AFFIRMED.