[Crim. No. 1323.   Second Appellate District, Division Two.—November 13, 1926.]

THE PEOPLE, Respondent, v. T. C. HUGHES, Appellant.

[1] Criminal Law — Embezzlement — Appropriation of Trust Deed and Proceeds—Intent—Time.—Where an agent is entrusted with the possession of a trust deed, with power to dispose of the same, and he converts said trust deed to his own use with the intent to defraud his principal, and thereafter he sells said trust deed and appropriates the proceeds to his own use, he is guilty of embezzling the trust deed, and not the proceeds of the sale.

[2] Id.—Fraudulent Intent—Evidence—Verdict.—In this prosecution for the embezzlement of a trust deed which had been entrusted to defendant, with power of sale, but which he disposed of and appropriated the proceeds to his own use, the oral, documentary, and circumstantial evidence strongly suggested and was entirely sufficient to justify the belief that defendant from the beginning of the transaction, and particularly while he still retained possession of the trust deed, definitely intended to deprive the complaining witness thereof, as well as of any money which might be obtained from its sale, and the jury was fully justified in finding the defendant guilty as charged.

[3] Id.—Bailments—Indebtedness upon Other Transaction—Embezzlement by Bailee.—Under implicit instructions of a bailor

———————

1. Who are within statutes relating to embezzlement by trustees or other persons acting in "fiduciary capacity," note, 41 A. L. R. 474. See, also, 9 R. C. L. 1278.

to a bailee for the sale of personal property and the delivery of the proceeds to the former, the mere fact that the bailor is indebted to his bailee upon some other transaction is no defense to a charge of embezzlement of such proceeds by the latter.

[4] ID.—ELEMENTS OF CRIME—INSTRUCTIONS.—In this prosecution for the embezzlement of a trust deed, the giving of an instruction which stated the elements of the offense charged and concluded with the statement that if the jury should find them all present, they should return a verdict of guilty, was not erroneous in thus directing a conviction, particularly where, at the request of defendant's counsel, the jury was further instructed if certain of several enumerated elements were found to be absent, they should find the defendant not guilty.

(1) 20 **C. J.**, p. 431, n. 43, p. 433, n. 63, p. 436, n. 66, p. 445, n. 48, p. 488, n. 71. (2) 20 **C. J.**, p. 414, n. 32, p. 487, n. 65. (3) 20 **C. J.**, p. 455, n. 37 New. (4) 16 **C. J.**, p. 944, n. 10.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreve for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant was convicted upon an information filed by the district attorney of Los Angeles County charging that "the said T. C. Hughes . . . was the agent and bailee of Frank Powell, . . . and then and there by virtue of his trust as such agent and bailee came into the care, possession, custody and control of him, the said T. C. Hughes one trust deed of the value of twenty-five hundred dollars ($2500.00) . . . And he, the said T. C. Hughes, after the said personal property of the value aforesaid had come into his possession, custody, care and control, as aforesaid, . . . did then and there . . . convert, embezzle and appropriate the said personal property to his own use,

4. Purpose to take or retain property in payment, or as security for, a claim as affecting embezzlement, notes, 13 **A. L. R.** 142; 19 **A. L. R.** 303.

and to uses and purposes not in the due and lawful execution of his said trust as agent and bailee and person so entrusted therewith, as aforesaid.''

It appears that the defendant telephoned the prosecuting witness Powell and inquired as to whether or not he would be willing to dispose of the trust deed here in controversy, and that as a result of the telephonic conversation which then ensued Powell delivered to Hughes certain documents, including the deed of trust. This occurred on April 20, 1925. At the time of such delivery the parties executed an agreement in writing, which provided, in part, as follows:

"I herewith hand you Title Guarantee & Trust Company's Deed of Trust and accompanying note dated January 16th, 1925, for $2500 made by E. S. Frease in favor of M. Stanhope and recorded January 16th 1925 at 4 p. m. in Book 4304, page 385 of official records . . . These documents are placed with you in trust for the purpose of sale of same. You are to sell the deed of trust and note for me on or before April 30th 1925 for a sum to net me $2123.00 and the proceeds of this sale are to be delivered to me on or before that date and at the time the sale is consummated. In the event of failure to make the sale, all the above mentioned documents are to be returned to me upon demand.

"FRANK POWELL.

"I hereby acknowledge the receipt of the above described documents and accept the trust—

"T. C. HUGHES.''

The evidence tended to show that Frease and Hughes were associated in business, and that they had authority to use Miss Stanhope's name in certain business transactions; that they had previously had dealings with Powell, and were familiar with the status of the property upon which the deed of trust here involved constituted a lien. It further was made to appear that as a pretext for obtaining possession of the securities in question appellant represented to Powell that the owners of said premises were desirous of refinancing them. We quote from appellant's brief the following statement of Powell's testimony:

"I telephoned to Hughes almost daily after turning the trust deed over to him, inquiring if he had used or sold it, and about the 27th or 28th he told me over the telephone

that the trust deed was sold, and that I would get my money within a day or two, that the money was not yet up, but that it was all disposed of. On the evening of April 30 he telephoned me about six o'clock and told me the sale had fallen down. I told him I would be down in the morning to get my papers, and he said I wouldn't get them. I asked 'Why not?' and he answered, 'Because I won't give them to you until you straighten up that matter of the Mierau trust deed.' I asked for an explanation, and he said he couldn't give me the trust deed yet. The following day I went to his office. No one else was present. I had consulted my attorney prior to going to the office, and there demanded that Hughes give me $2123, or return the papers. He said he couldn't, or wouldn't, and I told him I would go to the District Attorney with the matter. He answered, 'Well, I might as well go to the penitentiary for this as for anything else.'"

One Roy C. Kellogg testified that the defendant sold and delivered to this witness the trust deed in question on April 27, 1925—three days prior to Powell's demand—for a total consideration of $1,920. Documentary evidence consisting of receipts signed by the defendant indicated, and Kellogg also testified, that $1,204.66 was paid to appellant in cash, $125.34 was credited to Kellogg on other transactions, on the date last mentioned, and that the balance of $590 was paid to appellant on May 6, 1925. Although it was testified that appellant stated to Deputy District Attorney Works that Powell was indebted to him in the sum of $895, Powell denied this upon the trial, and two of appellant's checks, payable to Powell, for $895 and $105, respectively, were offered in evidence, which the latter swore were given him by Hughes on April 21, 1925, in lieu of a former worthless check for $1,000. The defendant testified before the jury that he had given the check for $895 to the prosecuting witness on April 23d, as a payment on account toward the $2,500 trust deed described in the information. The witness Powell positively averred that at no time had he ever received a return of his securities, or any sum of money, in whole or in part payment therefor. The record thus presented a question of fact, with which we are not here concerned.

[1] The principal question of law urged by appellant at this time is as to whether or not the offense, if one was committed, was an embezzlement of the trust deed, as alleged, or an embezzlement of the proceeds derived from its sale. It is urgently insisted that the evidence was insufficient to warrant a conviction herein because the defendant was entrusted with the document in question, with full power of sale, and that it appears that the defendant sold and disposed of the same pursuant to such power, and not otherwise.

Section 507 of the Penal Code provides as follows: "Every person entrusted with any property as bailee, tenant, or lodger, or with any power of attorney for the sale or transfer thereof, who fraudulently converts the same or the proceeds thereof to his own use, or secretes it or them with a fraudulent intent to convert to his own use, is guilty of embezzlement."

We do not question the many authorities cited by appellant, holding that one who as bailee for sale legally disposes of property in strict accordance with the conditions of his trust, cannot be held to have embezzled the property, but that he may thereafter, nevertheless, embezzle the proceeds of such sale by converting them to his own use without the consent of the bailor.

At first blush the question as to whether an agent may be said to have converted the property of his trust or the proceeds of a sale thereof frequently will appear difficult of determination, but the consensus of authority consistently holds that the solution of the question depends upon the point in time when criminal intent was first conceived. As said in 20 C. J., page 431, section 18: "Authority to do the act relied upon as a conversion is no defense, if it was done with felonious intent." And in *Agar* v. *State*, 176 Ind. 234 [94 N. E. 819], where it appeared that the defendant, in lawful custody of public warrants, passed them to the auditor and received credit for the proceeds, it was said:

"Authority to do an act relied on as conversion is no defense if it was done with felonious intent. The intent with which the act was done was the vital question in the case.

"The rule is that when an agent or employee does with money or property in his possession only what he is author-

ized to do by the terms of his employment, having no
felonious intent, he is not guilty of embezzlement. But the
authority to sell property or to otherwise deal with it is
no defense to a charge of embezzlement, if the agent or
employee converts the same to his own use with a fraudu-
lent intent. Therefore when an agent or employee has
authority to sell or otherwise dispose of property, and does
sell or otherwise dispose of it, not for the purpose authorized,
but with fraudulent intent to appropriate it or its proceeds
to his own use, he is guilty of embezzling the property
itself, as much as if he had no authority to sell or other-
wise dispose of it, for the sale or other disposition of the
property with said fraudulent intent is a conversion. *Leon-
ard* v. *State,* 7 Tex. App. 417; *United States* v. *Sander,*
6 McLean, 598 [Fed. Cas. No. 16,219], 98 Am. Dec. 134, note;
2 Bishop's Crim. Law (6th ed.), sec. 371; 2 Bishop's Crim.
Law, secs. 370, 371; Clark & Marshall on Law of Crimes
(2d ed.), p. 520; 10 Am. & Eng. Ency. of L. 995, 996.''

Again, in *State* v. *Baumhager,* 28 Minn. 226 [9 N. W.
704], it is said: ''The distinction must be kept in view
between the offense and the evidence of it. The first
possession being lawful, the act of embezzlement consists,
in a certain sense, in a *mere act of mind,* without any out-
ward and visible trespass, as in the ordinary larceny. That
this mental act of fraudulent appropriation has taken place
has to be inferred from the conduct of the defendant.
Roscoe's Cr. Ev. 453.''

In the instant case it appeared that at the time of re-
ceiving the securities from Powell, Hughes was in financial
straits, his bank account had been attached, and he had
given a check which the bank returned; he offered various
deceptive excuses for his failure to return the trust deed
or to deliver the proceeds of its sale; it was shown by
documentary evidence that he had disposed of the property
prior to the time of his statement to Powell that the trans-
action had failed of consummation. As to whether or not
the defendant obtained the trust deed from Powell with
criminal intent was therefore purely a question of fact.
It lay solely within the province of the jury to believe the
testimony of the defendant, or to believe the evidence ad-
duced by the People, and to conclude that the defendant

did not tell the truth in those respects wherein he contradicted the People's oral and documentary evidence.

The doctrine announced in the authorities cited above upon this point is not inconsistent with the principle contended for by appellant as stated in certain cases referred to by him, holding that a conviction of embezzlement will not be sustained where there is a material variance between the description of the property as contained in the indictment and as established by the proof, consequently that an indictment for embezzlement of money will not be sustained by proof of embezzlement of drafts, county warrants, or stocks. In the instant case the question is not one of variance, but the defendant having been charged with embezzling a trust deed, we are called upon to decide whether or not the evidence is susceptible of the construction that he did embezzle that instrument.

Nor is anything said in the case of *People* v. *Borchers,* 199 Cal. 52 [247 Pac. 1084], in conflict with the proposition that one may be guilty of the embezzlement of property even though he had authority to sell the same, which he did, if while doing so he entertained the fraudulent intent to withhold it and its proceeds from his principal. Neither in the Borchers case nor in any authorities cited therein upon the rule of law "that where property, including commercial paper, is entrusted to one with authority to transmute it into property of another kind, including cash, to the use of the one who deposits with the trusted person, the property so entrusted cannot be the subject of embezzlement, if the transmutation is made, but only the property which results from the change," is there any statement at variance with the rule which we have outlined as a test in determining the character of the offense committed in instances such as those presented here. Neither in that case nor in any of the cases cited by it to which we have referred was any question presented as to when the intent to convert was first conceived. In none of them was there any suggestion that at any time while the defendant was still dealing with the property as authorized he possessed an intent to deprive the lawful owner of his property or of its proceeds. For aught that is contained in these decisions, the intent to defraud came into existence after the transmutation of the property occurred. Since the issue

here under discussion was not presented, no occasion arose for a pronouncement of the principles which must govern when it arises. [2] Here the evidence strongly suggests and is entirely sufficient to justify the belief that the defendant from the beginning of the transaction, and particularly while he still retained possession of the trust deed, definitely intended to deprive the complaining witness thereof, as well as of any money which might be obtained from its sale. By the written authorization which he had received he was expressly directed under certain conditions to return the documents delivered to him by Powell. The jury were justified in concluding that the defendant, even when accepting such documents, had determined that he would never comply with that provision of the agreement. Under such circumstances the defendant's felonious intent was coupled with the possession of the deed, and the offense was then consummated. Indeed, it was as complete as though the defendant while still in possession had made an oral declaration that he would not carry out the trust nor return the documents. The difference would be only one of proof. In this case, accepting the theory that the defendant possessed the fraudulent intent to convert while still holding the deed of trust, each of the five elements required by the opinion in *People* v. *Borchers, supra,* to exist in making out a case of embezzlement, was present: (1) Agency; (2) ownership by the principal; (3) lawful possession by the accused when embezzlement took place; (4) conversion by the accused, and (5) intent to convert and to deprive the principal of his property unlawfully.

In an opinion recently written by this court the distinction which we have pointed out above was recognized. In *People* v. *Keller, ante,* p. 612 [250 Pac. 585], where the question of venue was under discussion, it is said that no offense was shown to have been committed in Los Angeles County. The defendant was charged with embezzlement of money. He had received a check on a bank in Los Angeles County, deposited it to the account of his principal in an Orange County bank, and had drawn on said account to pay an obligation of his own. After holding that the defendant was properly charged with embezzlement of money, on the question of venue, it was said: "And it doubtless is true that when delivering the check to Bixler

at Los Angeles he then and there fully intended that the sum of money represented by the check should be misappropriated in the manner already described. But at that time appellant did not have possession of the money. *His fraudulent and felonious intent was not coupled with possession.*" (Italics here supplied.)   But, as we have said, in the instant case the evidence was sufficient to support the belief that the defendant's possession of the deed of trust was co-incident and coupled with his felonious intent to convert it.

In all of this discussion we must not lose sight of the fact that the defendant had no general authority to sell as his judgment might direct or his discretion dictate, but he was authorized to sell only within a time limitation, and for a certain sum. The sale was for less than the amount required, and in that particular he violated his authority as clearly as though instead of having sold the deed he had exchanged it for property of less value.   (*Ager* v. *State, supra.*)   Though given until April 30th to sell, it was agreed that if the property should be sold before that date, he should remit the proceeds "at the time the sale is consummated." The sale was consummated on the 27th, when he denied that a sale had been made, and at no time thereafter did he inform his principal of the true situation.

The jury was instructed that if they should "find from all of the evidence beyond a reasonable doubt that the defendant did receive the trust deed upon such trust, and did wilfully, unlawfully and fraudulently appropriate said trust deed to his own use and did dispose of the same contrary to the terms of said trust," they should find him guilty.   And at the request of his counsel they were further instructed as follows: "You are instructed that an essential element in the crime charged in this case is a felonious intent, and, before you can convict the defendant, you must find from the evidence that he intended to appropriate to his own use or to a use and purpose not in the due and lawful execution of his trust as agent and bailee the trust deed in question, and to cheat, wrong and defraud the complaining witness out of the same."

The precise question vital to the determination of the issues having been twice called to the attention of the jury,

we must presume that they considered it in determining whether he was guilty or innocent of the offense charged. If the jury concluded, as they may well have believed, that the defendant did not obtain the $2,500 trust deed in good faith, intending to sell it and to remit the proceeds to Powell as prescribed by his written instructions, but that he obtained the same intending to replenish his own depleted purse, sold it for much less than the amount required of his trust obligation, and retained the proceeds, then and in that event he was justly convicted of embezzlement of the instrument, and not of the proceeds. The first possession being lawful, the act of embezzlement is in a sense a mere act of the mind. That this mental act of fraudulent appropriation has taken place must of necessity be inferred from the conduct and statements of the defendant. (*State* v. *Baumhager,* 28 Minn. 226 [9 N. W. 704, 706].)

We think there was an abundance of oral, documentary, and circumstantial evidence which if believed by the jury, as we assume that it was, fully justified them in finding the defendant guilty.

A great many rulings, assigned as error, excluded evidence offered for the asserted purpose of showing that Powell was indebted to the defendant, presumably as a reason for the withholding of the proceeds of the sale or the deed of trust. [3] Under implicit instructions of a bailor to a bailee for the sale of personal property and the delivery of the proceeds to the former, the mere fact that the bailor is indebted to his bailee upon some other transaction is no defense to· a charge of embezzlement of such proceeds by the latter. (*State* v. *Lewis,* 31 Wash. 75 [71 Pac. 778]; *Clark* v. *Commonwealth,* 97 Ky. 76 [29 S. W. 973]; *Campbell* v. *State,* 35 Ohio St. 70; *State* v. *Brooks,* 85 Iowa, 366 [52 N. W. 240]; *Commonwealth* v. *Smith,* 129 Mass. 104; *People* v. *Hanaw,* 107 Mich. 337 [65 N. W. 231].) From what has been said above regarding the check for $895, however, this point requires but slight, if any, consideration, since the jury were amply warranted in concluding that such indebtedness had no semblance of reality.

[4] The only remaining point urged by appellant is that by giving the instruction from which we have first quoted

in part, the trial court directed a conviction, and *People* v. *Conboy,* 15 Cal. App. 97 [113 Pac. 703], is cited in support of this contention. In the cited case it appeared that after extended deliberation the jury returned to the courtroom and requested further instructions. The trial court there stated that it had read about all the instructions that the jury desired, and that there was no reason why they should not as honest, intelligent, reasonable men reach a conclusion; and they were told that they should consider the evidence and the law, regardless of personal observation, relations, or experience, and were ordered to "go out and do your duty." In the instant case it nowhere appears that any such circumstance or instruction is presented. The instruction here complained of stated the elements of the offense charged, and concluded with the statement that if the jury should find them all present, they should return a verdict of guilty. In response to the defendant's request they were likewise instructed that if certain of several enumerated elements were found to be absent, the jury should find the defendant not guilty. Both instructions stated the law of the case, and we see no error or inclination to persuade the jury in either of such instructions.

The judgment and order denying a motion for new trial are affirmed.

Works, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 10, 1927.