STATE v. LOOMIS F. IRISH.[1]

March 6, 1931.

No. 28,378.

[1]Reported in 235 N. W. 625.

*C. H. MacKenzie* and *Arthur E. Arntson,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Theodore N. Ofstedahl,* County Attorney, and *Thomas Mohn,* for the state.

WILSON, C. J.

Defendant appealed from an order denying his motion for a new trial after having been convicted of grand larceny in the first degree as charged in an information filed by the county attorney of Goodhue county.

The accusation is grounded on a transaction which defendant had with the State Bank of Pine Island, of which he was president and the managing executive officer. In the transaction he represented the bank as well as himself. Defendant paid $4,216 at a sheriff's sale for certain North Dakota notes and chattel securities of the face value of about $12,401.25. He then turned these notes into his bank and took credit in his checking account for $12,401.25. He used the credit, obtaining the $12,401.25, and is now charged and convicted with so getting this money under circumstances constituting larceny. This was in January, 1924. The bank was closed by the state commissioner of banks in May, 1924.

■ A person cannot be put on trial on an information until he shall have had a preliminary examination as provided by law. G. S. 1923 (2 Mason, 1927) § 10666. He of course may waive the examination. Id. The examining magistrate shall certify and make return to the clerk of the court before which the accused is required to appear. G. S. 1923 (2 Mason, 1927) § 10592. A record in the files of the trial court therefore in relation to this background is essential to a trial upon an information.

It is not necessary that such information be included in the settled case. The existence of such preliminary procedure will be presumed; and, since such preliminaries are found in the files of the trial court, reference may be had by that or this court, not the jury, to the contents of such files for knowledge to aid in the protection of the rights of the accused and to prevent his being subjected to any injustice. The importance of this will hereinafter appear.

■ Defendant was put on trial on April 14, 1930. On that day at ten a. m. there being two judges in the district, he filed an affidavit of prejudice against the trial judge, as authorized by

G. S. 1923, § 9221, as amended by L. 1927, p. 399, c. 283, 2 Mason, 1927, § 9221. The statute requires such affidavit to be filed within one day after it is ascertained which judge is to preside; but the trial court determined and held that the affidavit was not seasonably filed, and the record does not disclose anything to warrant our disturbing that finding.

The claim is made by the state that the affidavit was insufficient because it did not disclose the facts upon which the alleged prejudice is predicated, and our attention is directed to State ex rel. Wilberg v. McNaughton, 159 Minn. 403, 199 N. W. 103. But the McNaughton case rests exclusively upon the municipal court act there involved and not upon the general statutory law now before us, which is so framed as not to require a statement of the facts sufficient to justify a reasonable mind in believing that because of bias or prejudice the judge would not be impartial. Under the statute the language thereof is sufficient.

■ The initial movement in this criminal prosecution was the filing of a complaint in a justice court on January 7, 1927. The charge was the one for which he was tried. It accused defendant of taking $12,401.25 from the bank on January 16, 1924. The warrant specified the same time. On January 8, 1927, defendant, having been arrested, waived examination and was held to the district court, which convened on January 13, 1927, at which time the information was filed and defendant was arraigned and entered a plea of not guilty. On January 8, 1927, defendant was released upon a recognizance approved by the district court. He was put on trial April 14, 1930.

After the jury was impaneled and sworn and the state had opened the case to the jury, the state moved the court for an order permitting an amendment to the information changing the date of the commission of the alleged crime from January 16, 1927 (which was three days after the date of filing of the information) to January 16, 1924, the claim being that a clerical error had been made by inserting the year 1927 instead of the year 1924. Over defendant's objection the court ordered the information amended by in-

serting "1924" instead of "1927" as the time of the commission of the alleged crime.

May such an information be so amended? If so, was it prejudicial to the rights of the accused?

Great changes have developed in criminal procedure and practice in Minnesota during the last 40 years. It is well that it is so.

G. S. 1923 (2 Mason, 1927) § 10665, provides that all provisions of law relating to indictments and for testing the validity thereof shall apply to informations.

G. S. 1923 (2 Mason, 1927) § 10644, provides that the precise time at which the offense was committed need not be stated in the indictment but may be alleged to have been committed at any time before the finding thereof, "except where the time shall be a material ingredient in the offense."

G. S. 1923 (2 Mason, 1927) § 10647, specifies the sufficiency of indictments, and the fifth subdivision requires that the indictment should state "that the offense was committed at some time prior to the time of finding the indictment." G. S. 1923, § 10648, provides that no indictment shall be insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. This statute was amended April 19, 1927, by L. 1927, p. 410, c. 297, 2 Mason, 1927, § 10648.

We are not here concerned with an amendment to an indictment, but to an information, which has its origin in the common law. State ex rel. Knudson v. Municipal Court, 164 Minn. 328, 205 N. W. 63; State v. Sillbaugh, 250 Mo. 308, 157 S. W. 352. Its common law characteristics have not been destroyed. Secor v. State, 118 Wis. 621, 95 N. W. 942. Its scope or field of application has been enlarged and extended.

It was the rule of the common law that an information was subject to substantial amendments with the permission of the court after the trial had commenced. Our statute should not therefore be construed as less liberal. It must be construed so as to effectuate

its purpose and not as taking away a common law power. State v. White, 64 Vt. 372, 24 A. 250. In the instant case time is not an ingredient of the alleged crime. State ex rel. Curry v. Wagener, 145 Minn. 377, 177 N. W. 346. The date given was obviously impossible. The time was imperfectly and defectively stated. Perhaps it was as if the time had not been stated at all.

The date in the particular crime is not an essential element. It is not a matter of substance. Such defect is of form only and is cured by the statute that provides that no indictment shall be deemed insufficient by reason of any defect or imperfection in matter of form. U. S. v. Howard (D. C.) 132 F. 325; U. S. v. Gaag (D. C.) 237 F. 728; State v. Brooks, 85 Iowa, 366, 52 N. W. 240; Commonwealth v. Hill, 2 Pearson (Pa.) 432.

The past tense being used, as stated, showed that it related to a time prior to the filing of the information. It would seem that under such conditions the proper amendment should be permissible, always considerate of the defendant's claim for a continuance or postponement of the trial. Defendant made no such request.

In State v. Carmel, 36 S. D. 293, 154 N. W. 808, the court held that where the information alleged the commission of the crime on a date after it was filed an amendment may be allowed.

In State v. Thompson, 137 La. 547, 68 So. 949, it was held that an impossible date in an information could be corrected by amendment. In People v. Dinsmore, 102 Cal. 381, 36 P. 661, it is held that where an information charges the offense to have been committed on a day subsequent to its filing but alleges in terms that the acts charged were committed prior to the day of its filing it is entirely apparent that a mistake has occurred and that it may be corrected by an amendment. The use of the past tense is important. Threadgill v. State, 99 Ark. 126, 137 S. W. 814; Commonwealth v. Miller, 79 Ky. 451; Williams v. Commonwealth, 13 Ky. L. 893; Conrand v. State, 65 Ark. 559, 47 S. W. 628; State v. Patterson, 116 Ind. 45, 10 N. E. 289, 18 N. E. 270.

There are some authorities to the contrary, but they do not appeal to us as indicating the correct rule. We hold that the court

had the power to permit an amendment of the information after the trial commenced.

Was defendant prejudiced by the amendment? We think not. He knew in the first instance when before the justice court what the charge was. He then was advised as to the correct date. When he was arraigned on the information he presumably knew that the files in the court wherein he was pleading gave the correct date. With that knowledge he could hardly be misled by an impossible date. The figures expressing the amount involved which were credited to his bank account on the correct day must have been in his mind. He did not seek delay; he apparently had no misapprehensions. Counsel's objections to the amendment were numerous, but they failed to specify any particular reason why the amendment would be to the prejudice of the accused. Had the effect of the amendment made it necessary for defendant to prepare for an unanticipated assault, that fact most certainly would have been disclosed to the court. In that event the court would have proceeded cautiously. There is no indication throughout the record that defendant was not ready and prepared to disclose his version of the transaction.

■ The court received in evidence over defendant's objection that portion of a letter written to the bank by the state commissioner of banks on November 21, 1923, reading:

"You will positively not take any more mortgages, contracts for deeds or notes of any description into the bank in which your president is interested."

Error is also based upon the court's instructions as to the state banking department and its supervisory powers. But the letter and such instructions were limited in their application for consideration to the question of defendant's intent in relation to the transaction upon which the prosecution was based.

The violation of the directions contained in the letter was competent evidence. It showed an utter disregard of state authority acting in the interest of the depositors of the bank and the public welfare. It had a tendency to characterize the defendant's conduct

as dishonest, tainted with fraud, and possibly corrupt in intention. The instructions related to the authority of the commissioner (then superintendent) of banks and that one who violated his lawful directions was guilty of a felony.

If the jury concluded that defendant, who had been a banker for many years, was violating some of the banking laws as well as defying state authority, as they might under the evidence in the case, that fact too would tend to characterize defendant's intentional conduct in the transaction involved as one of dishonest and unjust appropriation of the funds of the bank. The evidence was competent, and the instructions were imperatively required.

■ There is an attack upon the sufficiency of the evidence. Defendant is a banker of about 40 years' experience. The Union National Bank of Minot, North Dakota, loaned money to the Citizens State Bank of Tagus, North Dakota, and the notes and securities here involved were put up as collateral security therefor. The indebtedness was not paid. Much of the collateral was past due. The conduct of the Union National Bank would lead to the conclusion that the collateral was uncollectible. It decided to close out the collateral, and it gave the usual notice of sale for December 26, 1923. A few days before the sale one Jourgen Olson wired defendant from Minot suggesting that he could take up this collateral of the face value of $12,401.25 for $4,000. Defendant answered that he would. On the day of the sale he wired the money. The sheriff's report of the sale shows that the notes and securities were sold to defendant for $4,116.09. Jourgen Olson was present; defendant was not. The sheriff delivered the notes and securities to Olson, who on January 7, 1924, made a trip to Pine Island, Minnesota, and delivered them to defendant. Nine days later defendant turned this paper into his bank and took credit for the $12,401.25 which he later used.

He violated the directions of the state commissioner of banks. His conduct in buying paper of this character, much of which was past due, so far from home and turning it into the bank without in any way making himself liable thereon, was inconsistent with good

banking. The jury may have considered it inconsistent with honest conduct. The jury may have thought that it was an unconscionable profit for himself. The jury was justified in concluding that the motive was for his own benefit and not for the interest of the bank even though he owed the bank the utmost fidelity. The total amount ever collected on this paper was $3,665.08. The jury had a right also to reject defendant's version of the transaction and perhaps to discredit him further because of the unreasonable character of his explanation thereof.

Defendant in substance says this: "The First State Bank & Trust Company of Rochester, Minnesota, held a note for $6,000.00 and one for $4,000.00 signed by Jourgen Olson and John H. Werner." These notes, as well as notes of which these were renewals, were taken by this bank on the strength of defendant's guarantee on the back thereof. Defendant paid these notes on February 13, 1925, a little over a year after the transaction in question. He testified that he agreed with Jourgen Olson on January 7, 1924, to pay these notes, which he says evidenced indebtedness of Olson, to make up the full face value of the $12,401.25.

Defendant's version of the transaction tested the credulity of the jury. Rather strange that an experienced banker would go such distance from home to buy past due paper concerning which interested banks in the locality of the debtors were unable to collect. They were selling it out at forced sale. Why would defendant buy this paper at face value as he claims he did? It could not have been considered a desirable bank asset from any standpoint. Is it the conduct of an experienced banker? If he was zealously guarding the welfare of his own institution would he buy such paper in such a large amount at face value? If such was his notion of banking it is surprising that his institution did not fail long before it did. There is nothing to indicate that he knew anything about any of the makers of this paper, but he bought the paper solely upon the representation of Jourgen Olson that it was good. He makes no explanation as to why he would buy paper of this character in a foreign state. He makes no explanation as to why he would buy past due paper and list it in his bank as bills receivable. Why

should he? There is nothing to indicate that he ever expected at the time he wired the money to Minot to pay any more than the $4,000 for this paper. The evidence shows quite convincingly that it never had any greater value than the amount which has now been collected thereon. Indeed the Rochester bank knew defendant only in relation to its two notes. He brought the notes to it; he paid interest thereon. The state claims they evidenced his indebtedness.

It is difficult to understand how defendant upon his own theory could have honestly turned this paper into his bank and taken $12,401.25 therefor. He apparently was indifferent to the fact that he represented both sides. The jury may have concluded that he represented himself only. We must assume that the transaction was unusual and one not readily forgotten. Yet about two years later defendant told a bank examiner that he did not remember what he paid for this paper when he bought it for the bank, but he supposed that he paid what the notes called for. The examiner went to North Dakota and learned the facts. We have no difficulty in concluding that the evidence was sufficient to permit a jury to conclude that the transaction was a dishonest one embracing the elements constituting larceny.

■ The state put in evidence the amount the bank owed its depositors and the amount of cash on hand on the day of the alleged misappropriation and again on the day the bank was closed. This evidence was of little importance and of less harm. The amount of cash on hand in any bank in its normal healthy condition as compared with the amount owed its depositors is of little significance. These amounts at the time of the transaction may possibly have a bearing on the question of intent, but this information without the value of the bank's other assets is almost meaningless. On January 16, 1924, the bank owed its depositors $779,147.94 and had cash in the safe $10,569.57 and in correspondent banks $83,404.43. The record does not show what portion of the deposit indebtedness was time or what portion demand, but it would seem supplied with as much cash as the law requires based upon its deposits, and we do

not see how it in any way discredited defendant. The amounts at the time the bank closed were incompetent and immaterial. The record already showed that the bank was closed, and that fact was potential. The amounts were of no consequence here and were incompetent and immaterial. It was however error without prejudice.

■ Defendant assigns as error the ruling of the court permitting the sheriff who conducted the sale in North Dakota to testify that Jourgen Olson told him just before the sale that he was buying the notes for defendant. The claim is that this was proving agency by the declaration of the agent in violation of the rules stated in Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646. We are not impressed with the importance of the character or capacity in which Olson acted at the sale. The fact is, entirely aside from what Olson told the sheriff, that Olson attended the sale and defendant did not. Defendant's contact with the sale was through Olson. Defendant wired the money pursuant to Olson's negotiations. The sale was made to defendant by the sheriff, who in his report to the court for confirmation reported the defendant as buyer. Olson received the notes from the sheriff and carried them to the defendant, who accepted them and used them as his own. In the negotiations it had not been suggested that the defendant was making a loan to Olson. Olson had not asked for a loan. Before this testimony was received these facts had been disclosed in the record, and exhibit J, the sheriff's report of sale to defendant, and the telegrams and letters between defendant and Olson had been received. A prima facie case of agency had been made, and that was sufficient to permit the reception of the testimony. Drabek v. Wedrickas, 182 Minn. 217, 234 N. W. 6.

We have considered the other assignments of error, including those attacking the instructions to the jury, and conclude that the defendant has had a fair and impartial trial. If so, our work is done.

Affirmed.