STATE OF MINNESOTA v. F. R. ROSE and Others.[1]

December 8, 1897.

Nos. 10,886—(27).

70 403
76 213

**Forgery of Instrument—Contract for Advertisement—Indictment.**

If an instrument alleged to have been forged is of such a character as not to import a legal liability on its face, it may be made the subject of such a charge by alleging in the indictment such facts and circumstances as will, when taken in connection with the instrument itself, invest it with apparent legal efficacy, and enable the court judicially to see that the instrument has a capacity to defraud.

**Definition of Forgery—G. S. 1894, § 6702.**

Forgery is the fraudulent making of a false writing, which, if genuine, would apparently be of some legal efficacy; and the uttering, publishing and putting off as true of the same with intent to defraud, is the offense specified in G. S. 1894, § 6702.

**Same—Facts Alleged in Indictment Sufficient to Constitute Offense.**

*Held,* in the case at bar, that the indictment alleged facts sufficient to constitute a public offense under said section, for, if the instrument set forth had been genuine, it would, in connection with the extraneous facts and circumstances pleaded, apparently have possessed some legal efficacy.

**Same—Other Instruments as Evidence.**

On the trial of a person charged with uttering, publishing and putting off as true a false or forged instrument, other instruments found on his person or passed by him about the same time may be introduced in evidence upon proof that they are also false, forged and fraudulent. Without such proof they are not admissible.

**Same—Foundation for Such Evidence.**

*Held,* that the foundation for the introduction in evidence of certain alleged false and forged instruments, passed by the defendant about the time he uttered and published that which was made the foundation of the indictment, was properly and sufficiently laid under this rule, on the trial of this case.

[1] Reported in 73 N. W. 177.

The defendant and three others were indicted for the crime of forgery in the second degree. When arraigned in the district court for Ramsey county, defendant interposed a separate demurrer to the indictment on the grounds that more than one offense was charged and that the facts stated in the indictment did not constitute a public offense. The demurrer was overruled. Upon a trial the jury returned a verdict of guilty. From an order denying a motion for a new trial, Kelly, J., defendant appealed. Affirmed.

*T. R. Kane,* for appellant.

The term "an instrument or writing" as used in the last paragraph of G. S. 1894, § 6692, subd. 2, means a legal writing or written agreement, embodying a promise, a contract or an obligation. Hoag v. Howard, 55 Cal. 564; 1 Bouvier, Law Dict. 815; 1 Rapalje & L. Law Dict. 666; State v. Kelsey, 44 N. J. L. 1, 34; State v. Fenly, 18 Mo. 445; 3 Century Dict. 3126; 1 Abbott, Law Dict. 630.

An instrument so incomplete in its form and so uncertain in its terms as not to import on its face a legal liability or obligation cannot be the subject of forgery, unless there exist such facts and circumstances, connected with its inception and origin, as taken together with the instrument, would render it effectual in establishing a legal liability to the prejudice of another's right. Carberry v. State, 11 Oh. St. 410; People v. Shall, 9 Cow. 778; Com. v. Dunleay, 157 Mass. 386; Shirk v. People, 121 Ill. 61; Moore v. State, 13 Ohio C. C. 10; Com. v. Butler (Ky.) 37 S. W. 840; Clarke v. State, 8 Oh. St. 630.

The instrument set forth in the indictment embodies in its terms, and imports upon its face, neither a promise, an agreement nor an obligation to any person or persons that could be determined by an inspection of said instrument, and is therefore insufficient as a basis upon which to predicate the charge of forgery. 2 Bishop, Crim. Law (4th Ed.) §§ 503–506; People v. Shall, supra; Carder v. State, 35 Tex. Crim. App. 105; Shirk v. People, supra; Com. v. Dunleay, supra; Carberry v. State, supra; Rex v. Jones, 2 East, P. C. 991; People v. Harrison, 8 Barb. 560; People v. Parker (Mich.) 72 N. W. 250.

If an instrument is of such a character as not to import a legal

liability on its face, then to make it the subject of forgery the indictment must allege such facts and circumstances as will, when taken in connection with such instrument, invest it with apparent legal force and enable the court judicially to see that the writing has a capacity to defraud. Barnum v. State, 15 Ohio, 717; King v. State, 27 Tex. Ct. App. 567; 1 Wharton, Crim. Law (8th Ed.) § 740; 2 Bishop, Crim. Law (7th Ed.) § 545; Clarke v. State, supra; Com. v. Ray, 3 Gray, 441; Carberry v. State, supra; People v. Tomlinson, 35 Cal. 503.

The indictment fails to conform to the requirements of the statute in stating the acts constituting the offense charged, and fails to state any circumstances in connection with the instrument claimed to have been forged, which, taken in connection with it, would give it any apparent legal effect, and is therefore insufficient. Stowers v. Com., 12 Bush, (Ky.) 342; Com. v. Williams, 13 Bush, (Ky.) 267; Regina v. Radford, 5 Brit. Cr. Cas. 60; Com. v. Bowman, 96 Ky. 40.

To justify and to sustain a conviction of the crime of forgery claimed to have been committed by the uttering of a forged instrument, the state must not only prove: (1) That the instrument was uttered by some person other than the person who purports to have signed it, or that said instrument had been materially altered, after the genuine signature had been affixed, by some person other than the person signing the same. (2) That it was uttered by the person charged, with full knowledge of the facts and with intent to defraud. But it must go further, and prove by the best evidence of which the case in its nature is susceptible, that the signature affixed to said forged instrument, or the material alteration made, was done without the consent, authority, privity or acquiescence of the party purporting to be bound thereby. People v. Whiteman, 114 Cal. 338; People v. Mitchell, 92 Cal. 590; People v. Lundin, 117 Cal. 124; Leeper v. State, 27 Tex. Ct. App. 694; Romans v. State, 51 Oh. St. 528.

In a prosecution for forgery committed by the uttering of a forged instrument, it is error to admit in evidence, to show defendant's intent in passing the check, other instruments found on his person or passed by him about the same time, without proof that they also were forged. People v. Altman, 147 N. Y. 473; People v. White-

man, supra.   Circumstantial evidence alone will not warrant a conviction when it does not exclude every reasonable hypothesis except that of defendant's guilt.   Finlan v. State (Tex.) 13 S. W. 866.

*H. W. Childs*, Attorney General, *S. A. Anderson*, County Attorney, and *F. W. Zollman*, Assistant County Attorney, for the State.

The question is not, as counsel contends, whether the instrument at the time of its execution was given as an evidence of debt, but would it, at the time it was passed, be or purport to be evidence of such debt, or does it falsely assert as a fact a matter of no importance even if true.   For failure to observe this distinction, counsel has fallen into an argument which leads to ridiculous conclusions.   By his reasoning it would not be forgery to fill out a blank note bought of a stationer and sign the stationer's name, if the stationer had been paid for the blank notes purchased, because then the contractual relation between stationer and writer had ceased.

It is not error to admit in evidence other forged instruments passed by defendant.   2 Abbott's Crim. Brief, 352, and cases cited. The intent to defraud existed.   3 Rice, Cr. Ev. § 488.   It is both the English and the American rule that any evidence which tends to show an unauthorized filling in of an instrument is pertinent.   3 Rice, Cr. Ev. § 491.

COLLINS, J.

Defendant and three other persons were accused by an indictment found against them of the crime of forgery in the second degree, committed by uttering, publishing, and putting off as true, with intent to defraud, a certain false and forged written instrument.   G. S. 1894, § 6702.   A demurrer was interposed in defendant's behalf and overruled.   Upon a separate trial he stood convicted, and this appeal is from an order denying his motion for a new trial.   The demurrer was somewhat novel, for, as the first ground therefor, it was urged that more than one offense was charged, while, as a second ground, it was insisted that no offense at all was charged, because the facts stated did not constitute a public offense.   Upon the argument here counsel has wholly relied upon the second ground.

The forged instrument, as set out in the indictment, was in the following words and figures, the italics being ours:

*"Contract for Advertising.*

*"Mar. 26th, 1896.*

"To the Publishers:

"*$12.00.* This is to certify that we *agree to pay* the sum of *twelve* dollars for the insertion of our name and address in your book under 3 headings. Size of type, A. The book is not included.

"Name of firm, St. Paul Foundry Co. Bought by C. M. Power.

"Address 212–213 Manhattan Bldg., St. Paul."

Across the left side of these words appear the following: *"No credit allowed on this contract in advance of publication. Names of headings appear on back of contract."*

Written on back: "Architectural Iron Wks. Builders' Mat. Iron Wks."

And it was this instrument which had been uttered, published and put off as true by defendant and the other persons named with intent to defraud, according to the indictment.

Recognizing that the legal efficacy of this writing depended upon special or extrinsic facts, and for the purpose of supplying these facts, there was set out in the indictment a full history of the transaction out of which it was alleged the writing originated. Stated briefly, these facts were that the four persons named in the indictment as defendants, doing business together under the name of National Publishing Company and other names specified, in furtherance of an intent then and there had and entertained by each to cheat and defraud, contracted and agreed with the St. Paul Foundry Company to insert its name and address in a book called the "National Commercial Register," for which the foundry company agreed to pay two dollars, whereupon and on May 1, 1896, the foundry company and the defendants, doing business as said National Publishing Company, signed and mutually delivered two papers, the foundry company signing and delivering one and the defendants signing and delivering the other. The papers so signed and delivered were set out in full in the indictment. That alleged to have been signed and delivered to defendants by the foundry company was in these words and figures, a part of which we put in italics:

"*No. 36,086.   Compiler's Tracer.   May 1, 1896.*
"To the Publishers:
"This is to certify that we *have paid* the sum of *two* dollars for the insertion of our name and address in your book under 3 trade headings.
"Size of type, A.   The book is not included.
"Name of firm, St. Paul Foundry Co.   Bought by C. M. Power.
"Address 212–213, Manhattan Bldg., St. Paul."

While the other, signed and delivered by defendants to the foundry company, was in the following words and figures:

"Caution! See if agent's signature on receipt is same as that written on his 'Authority' after 'Signature,' and in same handwriting.
"No. 36,086.   Authorized Receipt of National Publishing Company, 9 W. Fourth Street, Cincinnati, O.   Old Number 99 W. Fourth street.

                   "May 1, 1896.
"Received of St. Paul F'dry Co. the sum of two dollars for 3 No. 2 headings in the National Commercial Register.
                   "E. L. Moore, Manager,
"$2.00.                     Per D., Agent."

It is alleged that thereafter the paper which was so signed and delivered by the foundry company in pursuance of this fraudulent intent was falsely and fraudulently altered, changed and forged so as to read as set out in the indictment, and, as has been heretofore stated, by some person or persons unknown; and that afterwards, and, with the intent then and there had by each of the defendants to cheat and defraud, they, and each of them, did wrongfully, unlawfully and feloniously utter, publish and put off as true to and upon the foundry company the said altered, changed and forged writing.

It is unnecessary for us to state more fully the special and extrinsic facts which were pleaded in the indictment. It will be seen that the writing bearing date May 1, 1896, signed by the foundry company, and, according to the indictment, delivered to defendants, is substantially in the form and language of that alleged to have been forged. For convenience in comparison we have italicized the words and figures in the first-mentioned writing said to have been changed and altered, and likewise the words and figures said to

have constituted its fraudulent alteration, as these appear in the alleged forged writing; the alteration, if any, and the difference, being that the words and figures, "No. 36,086. Compiler's Tracer," have entirely disappeared from the top of the former, and we find the words "Contract for Advertising" printed just below in the alleged forgery. In close juxtaposition we find inserted the figures "$12.00." The date has been changed from "May 1st," in the first, to "Mar. 26th," in the other. The provision in respect to the non-allowance of credits has been printed across the end of the paper, while the word "two" has been changed and altered to "twelve." And the words "have paid," as originally written in the first instance, have been erased, and in place thereof we find the printed words "agree to pay." With these changes and alterations, the instrument purports to be the agreement of the foundry company, and it bears its genuine signature.

The principal point made by counsel for defendant in his contention that a public offense has not been stated in this indictment is that the writing declared to be forged is a nudum pactum, that it has no legal effect or value, and therefore it is insufficient as a basis for the charge of forgery. It is urged that not only is it unilateral in its terms and wholly devoid of mutuality,—an essential element of a binding contract,—but that it is uncertain as to the party with whom the foundry company attempted to contract, or the name or character of the book in which its name and address were to be inserted, and also that there was a still greater uncertainty as to the time within which the book was to be published.

It may be true that the instrument as set forth in the indictment fails to embody in its terms, or to import upon its face, a promise, an agreement or an obligation to any person that could be determined by an inspection of the instrument itself, and that, standing alone, without the aid of facts and circumstances pertaining to it, would be insufficient as a basis upon which to predicate a charge of forgery; but that does not dispose of the case, for it is well settled that, if an instrument alleged to have been forged is of such a character as not to import a legal liability on its face, it may be made the subject of such a charge by alleging in the indictment such facts and circumstances as will, when taken in connec-

tion with the indictment itself, invest it with apparent legal efficacy, and enable the court judicially to see that the instrument has a capacity to defraud.

So, to support the indictment, it must appear from it—First, the false making or forgery; second, the uttering, publishing or putting out of the instrument knowing it to be forged, from which an intent to defraud may be inferred; and, third, that such instrument has some apparent or real legal efficacy. The instrument must be such that, if genuine, it can be made the subject of an action at law, and of course extrinsic facts and circumstances must be alleged in the pleading if this does not appear upon its face. If this had been a genuine instrument, an action at law could have been maintained upon it with the aid of the facts and circumstances alleged, for from these it appeared that it had legal effect, and was not a nudum pactum. It very clearly appeared from the facts pleaded, and with reasonable certainty, that the publisher addressed was the National Publishing Company, Cincinnati, Ohio, and that the book in which the name and address were to be published was the National Commercial Register. If no time was fixed within which the book was to be published, the law would infer that it was to be published immediately, or at least within a reasonable time.

Forgery is the fraudulent making of a false writing, which, if genuine, would apparently be of some legal efficacy. And, the fraudulent making of such an instrument being forgery, the uttering, publishing and putting off as true of the same with intent to defraud is an indictable offense under the statute. State v. Mott, 16 Minn. 424 (472). The indictment alleged facts sufficient to constitute a public offense, for, if the instrument set forth had been genuine, it would, in connection with the extraneous facts and circumstances pleaded, apparently have possessed some legal efficacy.

At the trial of the case it was shown that three of the defendants —Thomas Wills, Hamilton B. Wills, and the appellant, Rose—had organized a corporation in the state of Indiana in December, 1895, having the name of the Rose Publishing Company, with a principal office in the city of Indianapolis.

These three men operated from that office under different corporate names, sometimes as the Rose Publishing Company and again as the National Publishing Company. They also did business as the Merchants' & Manufacturers' Buyers' Guide. The fourth person named in the indictment—M. Roy Daniels—was in their employ as a solicitor, and as such obtained the writing of date May 1, 1896, from the foundry company, and at the same time delivered to it the other writing. He also at the same time solicited and obtained from other business names and firms in the city of St. Paul like instruments, and delivered to each a writing of the same import as that delivered the foundry company. It was Daniels who received the money and wrote at the end of each of these instruments the words, "Per D., Agent." Blanks peculiarly printed were used for the paper headed "Compiler's Tracer." Attached to this was a blank headed "Caution," which, when filled out to correspond with the so-called "tracer," was delivered to these business firms.

The proofs upon the trial were sufficient to justify the jury in believing, as claimed by the state, that these blanks were prepared by Rose and his associates for the express purpose of swindling; that the solicitor was a party to it; and that, after securing the signatures of these business men to the "tracers," the scheme or conspiracy was promoted at the Indianapolis office by cutting off the top or first line of the "tracer," which included the number, the words "Compiler's Tracer" and the date, by erasing the words "have paid" where written, and by changing the number of dollars mentioned in each original to a higher or greater number. Then, by means of a printing press, which was in the office, the words "Contract for Advertising" and the other words heretofore mentioned, were printed in and the date altered. The changed instruments were then ready to be published, and in a number of instances the defendant Rose, who presented them in St. Paul, succeeded in obtaining checks for the amounts which had been fraudulently inserted from the business concerns whose genuine signatures were attached to the papers he produced.

It is not important for us to further detail the facts and circumstances which appeared on the trial and which tended to show that the enterprise was in every way a rank fraud and conspiracy on

the part of the four defendants from the time they commenced operations until Rose was arrested. We have thus outlined what was shown upon the trial for the purpose of discussing certain assignments of error made by defendant's counsel, and relating to rulings of the court when admitting in evidence certain exhibits, documentary and otherwise.

After showing that Daniels solicited and obtained "tracers" from other business houses, counsel for the state offered in evidence the instruments upon which was based the claim that other fraudulent changes and alterations had been made. Oral evidence was also given tending to show that when these papers went into Daniels' possession they were nothing but the so-called "Compiler's Tracers," and that subsequently they had been changed and altered. It was also shown that defendant Rose had personally presented these alleged forgeries to the parties whose genuine signatures they bore at the same time that he presented the one signed by the foundry company, and that in nearly every instance he collected the amount of money called for therein. Objections were duly made to the reception of these papers upon the ground that the proof failed to show that there had been any alterations or changes, and the overruling of these objections is assigned as error.

On the trial of a person charged with uttering, publishing and putting off as true a false or forged instrument, and for the purpose of bringing home to the defendant a knowledge of the false and forged character of the instrument there involved, and to fix upon him a criminal intent, other instruments found in his possession or passed by him about the same time may be introduced in evidence upon proof that they are also false, forged and fraudulent. Without such proof, they are not admissible. So the simple question is, was there sufficient evidence upon this point? In each instance the member of the firm or house who dealt with Daniels, and who, after signing the tracer, delivered it to him, testified as to the condition and contents of the paper when delivered, and with more or less positiveness as to the alleged changes and alterations.

Counsel insists, with respect to the paper signed by Noyes Bros. & Cutler, that the testimony was insufficient to lay a foundation for its introduction—First, because the witness could not with any

degree of certainty remember the form or substance of the paper he signed and delivered; and, second, because it was not shown that the paper had thereafter been changed and altered without the consent and authority of the member who signed and delivered it, or without the consent and authority of some other member of the firm. When we take into consideration the premeditated manner in which Rose and his associates formulated the swindle, the preparation of blanks designed to carry out their fraudulent plans, the form and character of the papers signed and delivered, and all of the facts and circumstances shown upon the trial, all of which established a conspiracy to defraud in the exact manner in which the fraud was subsequently accomplished, Rose being the last actor in its consummation, we do not hesitate to say that a sufficient foundation was laid for the introduction in evidence of each and every one of these alleged forged instruments.

Counsel also strenuously objected to the introduction in evidence of the minutes of the first meeting of the Rose Publishing Company, which minutes were found in defendants' office at Indianapolis. These minutes bore a signature purporting to be that of defendant Rose as president of the corporation, and from them it appeared that he owned 248 of the 250 shares of corporate stock. And, more than this, there was nothing of any consequence in these minutes which had not already been shown by the certified copy of the articles of incorporation. There was no error in the ruling under which they were permitted to go before the jury, but, had there been, the defendant was not injured. We have examined carefully all assignments of error not hereinbefore discussed. None are meritorious, and not one needs special mention.

Order affirmed.