STATE v. W. B. BOURNE.[1]

June 13, 1902.

Nos. 13,036—(24).

**County Auditor—False Claim.**

G. S. 1894, § 6421, authorizes the prosecution of a deputy county auditor who audits claims for redemption of taxes, where the unlawful use of the official signature and seal gives currency and value to a fraudulent demand upon the public treasury.

**Same—Auditing False Claim.**

There is no legal distinction to be tolerated under this law in the act of creating a fabricated claim by an auditing official and the act of auditing the same when such officer knowingly attaches his official signature and seal to a demand which he has forged and manufactured himself.

**Same—Evidence of Similar Acts.**

Upon proof tending to show that a specific claim had been fabricated and audited by a public officer whose duty is to pass upon and allow the same, it is competent to receive evidence of other fictitious claims of a similar character which have been approved by him within a period of six months, including occasions before and after the act complained of.

**Errors Immaterial.**

Other minor errors considered, and *held* immaterial.

Appeal by defendant from an order of the district court for Ramsey county, Bunn, J., denying a motion for a new trial. Affirmed.

*A. E. Bowe* and *Lawler & Arnold*, for appellant.

*T. R. Kane*, County Attorney, and *O. H. O'Neill*, Assistant County Attorney, for the State.

LOVELY, J.

Defendant was convicted of auditing a fraudulent claim against Ramsey county as deputy auditor. He was sentenced to the state prison for five years. After motion for a new trial, which was denied, he appeals to this court.

[1] Reported in 90 N. W. 1105.

The statute under which defendant was prosecuted reads as follows:

"A public officer, or a person holding or discharging the duties of any office or place of trust under the state, or in any county, town, city, or village, a part of whose duty is to audit, allow, or pay, or take part in auditing, allowing, or paying, claims or demands upon the state, or such county, town, city, or village, who knowingly audits, allows, or pays, or directly or indirectly consents to, or in any way connives at, the auditing, allowance or payment of any claim or demand against the state, or such county, town, city or village, which is false or fraudulent, or contains charges, items, or claims which are false or fraudulent, is guilty of felony, punishable by imprisonment in the state prison for not less than two nor more than five years, or a fine not exceeding five thousand dollars or by both." G. S. 1894, § 6421.

The indictment sets forth in substance that defendant, as deputy auditor of Ramsey county, was charged with the duty of auditing claims in behalf of holders of tax certificates which had been redeemed; that he was required, on such redemptions being made, to issue to the owner of the certificate an order on the county treasurer for the amount; that he knowingly audited a fictitious claim against the county in favor of one A. W. Rowley by making out in the form and similitude of a good and genuine redemption warrant an order on the county treasurer when no real claim existed in fact, to which he affixed the official signature and seal of the county auditor as such deputy, and delivered the same to an unknown person, the force and effect of which, when so issued and audited, was to create a false and fraudulent claim in favor of the payee named therein.

The evidence was amply sufficient to show that defendant was at the time of the alleged malfeasance a deputy county auditor of Ramsey county; that he was authorized to and did act upon the applications of parties holding tax certificates which had been redeemed by payment into the county treasury of the amounts due thereon, which, under the customary procedure, would be paid to the certificate holder upon orders on the county treasurer issued by the deputy auditor. This duty required defendant officially to ascertain the amount due the holder of the certificate in the particular case. He would then cancel and file the certifi-

cate. The warrant on the treasurer would be signed in the name of the auditor by defendant as deputy, then delivered to the person surrendering the certificate, who would obtain the amount due him upon its presentation to the treasurer. Evidence tended to show that a redemption order on the treasurer was issued to A. W. Rowley by defendant for $184.25; that no certificate to which such order could apply existed in fact, but that the claim was fabricated by defendant himself; and that, after making out and sealing the order, defendant took it to the treasurer, and received, ostensibly for the payee, as he had done in other cases, a check on the First National Bank of St. Paul for the sum named therein, payable to Rowley. There was also evidence to show that this check was indorsed, then presented at the bank by defendant, and paid.

No evidence was introduced at the trial on the part of the defendant, who, after motion to dismiss, rested upon the proofs submitted by the state. It is now contended that upon the indictment and evidence the crime of auditing a fraudulent claim against the county was not legally established; that, even though the claim was fictitious, and the defendant's conduct indefensible, involving moral turpitude, his acts, as alleged and proved, do not legally constitute an offense within the strict terms of section 6421, supra. The reasoning by which this conclusion is reached is quite subtle and ingenious. It is claimed that the evidence shows no pre-existing claim upon which the order on the treasurer could be predicated, but was a creation of defendant,—hence his wrongful act in its fabrication was not an audit or allowance thereof within the letter of the law; that there is, upon a correct understanding of defendant's official duty, a distinction between the auditing and the manufacture of a false claim which he is to pass upon in allowing the same, requiring the exercise of judgment as a public officer,—hence the audit thereof by him is not a crime under the statute.

This contention seems to us to be fallacious, and devoid of substantial merit. Upon a sensible view of this statute it must be held to include within its fair intent a case where an official charged with the duty to audit a valid claim intentionally makes

unlawful use of his official signature and seal to give a deceptive value to any fraudulent demand upon the public funds. Conceding there was no foundation whatever for the pretense that Rowley had a claim against the county, such claim was of no efficacy until approved, and such approval confirmed by the signature and seal of the auditing official. The act of audit could be consummated in this way only. Assuming that the mental operation of approval would be distinct from the act of auditing, still the official signature and seal consummates this intent, and of necessity furnishes evidence thereof. While the existence of the false claim and the knowledge of its falsity by the auditing official are elements of the crime, the crime is not fully committed until actual use of the official name and seal is made. If, as insisted for defendant, there must be a pre-existing demand against the county, presented by a third party, to defraud the public treasury, which is sought to be accomplished through the assistance of the auditing official, the statute makes no such requirement in terms, and reason forbids the imputation upon the legislature of such a purpose, for the fraudulent character of a claim created by the auditor is as vicious as if created by some one else. While the legislature may have had in view the specific practice of using the name and seal of the office to audit and allow illegal claims when presented by third parties, still the mischief to be remedied by the enactment of this statute was the protection of the public treasury from unlawful demands, without reference to their originators or promoters, or the distinctive work of either in the unlawful scheme to rob the treasury by the distinct act of audit. Hence the theory is not to be tolerated that when the auditing official forges the claim himself, and then audits it to effectuate the fraud, his cumulative mendacity relieves him from one crime, because he commits others to accomplish his ends.

If there be some ethical distinction between the culpability of auditing a false claim which the officer has created and auditing a fraudulent claim when presented by a third party, it involves a refinement in casuistry, rather than a question of practical utility in construing a penal statute designed to protect the public against a recognized evil. The most subtle casuist, however,

would hardly resolve such a distinction in favor of an official who had forged the claim in order that he might approve it with less danger of detection and more benefit to himself than the offense of having wrongfully used the official name and seal for the benefit of another.

We do not consider it of any significance, either, that the payee named in the order was a fictitious person. The jury was not required to adopt this conclusion, for the payee, Rowley, was represented by defendant in the use made of his name as a real person. Such representation was calculated to deceive the treasurer, and it can be of no benefit to defendant now that Rowley might have been a myth.

The trial court instructed the jury that in the allowance of the claim against the county by the issuance of the warrant defendant audited, allowed, and consented to its payment. Objection is taken to this language upon the ground that the court authorized the jury to consider distinctively the element of defendant's consent to the payment of the claim, it being urged that section 6421, supra, distinguishes between crimes of auditing officers and disbursing officers. That there are two classes of offenses provided for therein, viz., the crime of officially auditing and of officially paying a false claim, is true; but it seems reasonably clear from the terms of the statute itself that it is an offense for an auditor knowingly to "consent" to the auditing of a fraudulent claim; hence it cannot be held that this statutory term relates solely to the act of a disbursing officer. It was perhaps unnecessary to use this term in the connection adopted by the lawmakers, but this was doubtless done ex industria from exceeding caution to protect against the subterfuges and connivances of auditing as well as disbursing officials. However, this objection to the charge is too technical to be worthy of serious consideration, for by the auditing of a false claim the officer necessarily consents to the use of the official name and seal to defraud the public, which was the mischief the statute was enacted to prevent.

Upon the trial, the state introduced evidence tending to show that A. W. Rowley had no claim against the county, and that the particular demand described in the indictment was fictitious, and

then introduced evidence tending to show that other fraudulent claims of a similar character in respect to defendant's unlawful use of his office had been allowed by him as deputy county auditor covering the period of six months on occasions before and after the specific act complained of, with further proof that they had been paid, and the avails appropriated to his use. This evidence was received over defendant's objection, and it is now contended that these rulings of the court were erroneous and prejudicial.

That such evidence tended to prove distinct crimes from the one complained of is true, yet the charge against defendant was of a character which authorized the proof of similar acts committed at a time not too remote to have a bearing upon his purpose in auditing the specific claim for the audit of which he was prosecuted. It belongs to that species of proof which tends to characterize the commission of an act which in and of itself might have been perpetrated innocently or under a mistake, as the uttering of forged paper, the receiving of stolen goods, or the passing of counterfeit money. Jones, Ev. §§ 142, 143, and cases cited. One isolated act of the deputy auditor in passing upon an illegal claim might be explained upon the ground of ignorance or mistake, but other acts of a similar character at or about the same time would have a reasonable and natural tendency to prove that the specific act was committed with unlawful intent. This evidence was of times so near the crime charged as to have had such a tendency, and was therefore competent. In order to show that one of the collateral claims thus received was used to discharge a debt of defendant, who fabricated it to pay a claim against him in favor of the St. Croix Lumber Company, evidence tended to show that he obtained a check from the county treasurer payable to the cashier of the lumber company. This was established by the evidence of the payee of such check that he had no claim against the county, and also that he received the check in payment of a debt against the defendant. The books of the lumber company had an entry of the receipt of the check in the transactions of the day when it reached it. This entry was received at the trial over defendant's objection. While it is doubtful if a foundation was laid for its reception sufficient to establish a claim by the lumber

company against defendant, yet the check itself was produced, and its receipt was established by the cashier, who was the payee named therein. Its use by defendant for his own purpose was not disputed, and we are unable to discover that any possible prejudice could have resulted from the introduction of this entry.

The order appealed from is affirmed.