# STATE v. A. P. OMODT.[1]

October 23, 1936.

No. 30,939.

[1]Reported in 269 N. W. 360.

*William E. Flynn, A. E. Sheridan*, and *Thomas A. Flynn*, for appellant.

*Harry H. Peterson*, Attorney General, *Roy C. Frank*, Deputy Attorney General, and *L. L. Roerkohl*, County Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant was convicted of forgery in the third degree as defined in 2 Mason Minn. St. 1927, § 10327(1), which reads:

"Every person who—

"1. Being an officer or in the employment of a corporation, association, partnership, or individual, shall falsify, or unlawfully and corruptly, alter, erase, obliterate, or destroy any accounts, book of accounts, records or other writing belonging or appertaining to the business of the corporation, association, partnership, or individual;

\* \* \*

"Shall be guilty of forgery in the third degree."

Being unsuccessful on his motion for new trial, he appeals from the order denying it.

While the record is very voluminous, the essential facts and issues are not as difficult or involved as one might suspect. The evidence would justify a jury in finding that: Defendant is a long-time resident of Houston county, 54 years of age, married, and has a family of four children. He is highly regarded by those who know him and has always borne a good reputation for honesty and integrity. While still a young man he became an employe of the Houston State Bank and by virtue of his capacity and service there rapidly advanced, becoming cashier and later president thereof. He was over a period of many years its active and managing officer. He was also secretary-treasurer of the Houston Creamery Association. In 1927 that association entered upon an improvement program involving large sums of money. As a banker it was natural

and entirely proper that he should be intimately connected with the financing of a new creamery building and equipment going into it. He handled large sums for the association both in respect of the financing of the new structure as well as the handling of funds pertaining to the business itself. His present difficulty seems to be the natural outgrowth of a long and systematic course of juggling of the books and records of the creamery association. The evidence justifies the claims of the state that at the time of trial he was short in his creamery accounts to the extent of more than $16,000. Liability extended back over several years and apparently increased from time to time. He speculated and lost. The situation is not much different from that oftentimes found with fiduciaries who enter into speculative fields.

Coming directly to the present offense, it appears that on September 16, 1933, the board of directors of the association duly passed a resolution directing defendant as secretary-treasurer to make a payment of $500 on an indebtedness of that association to the bank. Defendant as secretary kept the minutes of the meeting and duly recorded the resolution in his own handwriting upon the association's minute book. Pursuant thereto, on September 20, he issued a check for that amount, but it was never presented or paid. Instead, defendant appropriated the $500 to his own use. Amongst the books kept by him was also what is known as a disbursement journal. On the same day (September 20) he made an entry as a payment "Houston State Bank on note $500." That this entry was false is conceded. On that particular day the association had a credit balance in the bank of $1,636. Also, during that month, the association had $1,110 on hand representing the proceeds from the sale of powdered buttermilk. It seems that out of this particular sum the board intended this payment to be made.

During that year, and in conformity with a habit frequently used and employed by defendant, a great deal of juggling of figures took place. There are many discrepancies which might well lead the triers of fact to the belief that this particular entry and many others were made deceitfully and for the purpose of hiding the truth.

Of course defendant denied any criminal intent and averred and so testified that he had forgotten the item; that when this check was issued the association's account in the bank was short; that later that sum, instead of being paid to the bank, was appropriated by him to his own account to repay money he had advanced for the association. He also claimed that when he checked the annual report prepared by him he discovered the mistake and then charged himself with the $500, but he never corrected the entry or informed the board about the error. During that same year defendant withdrew for his own use some $2,800 of the association's bank account in addition to the $500 mentioned; but he claims that all of these were to reimburse personal loans or advancements he had made for the association. As to many of these loans or advancements he alone appears to have had knowledge.

On March 10, 1934, a new secretary-treasurer was elected. To him defendant turned over the books and records of his office. Upon discovery of irregularities it seems that several conferences were had with defendant in the hope that things might be straightened out. At one of these meetings appellant stated that he had expected trouble for some time, that he had lost sleep, and that he had used the association's funds for his own business. But he claimed that he had returned all the money that belonged to the association. At another meeting in December, 1934, upon being questioned with regard to certain irregularities, defendant said that if the amount involved were not so large he would make a cash settlement.

The state, to prove that defendant's entry was in fact false and knowingly so, introduced testimony showing these irregularities and many others.

The state and defendant employed their own accountants. Both of them prepared their findings and computations beginning with January, 1927. Their conclusions are not the same. There is genuine conflict. The record indicates clearly that the case was tried with thoroughness. There is nothing indicating improper conduct by anyone. It was a commendably temperate and judicial proceeding in every respect.

■ It is urged that the information is inadequate in that it fails to charge the defendant with knowingly and intentionally making the entry for the *purpose of defrauding his employer*.

We have already quoted the section under which the prosecution was had. The information follows the language of the statute. Ordinarily that is sufficient. The statute sets forth the elements of the offense intended to be punished. Defendant is charged with "knowingly, wrongfully, unlawfully and feloniously" falsifying the disbursement journal of that association; that the falsified record was "then and there a record belonging to and appertaining to the business of said association, * * * that he did then and there wrongfully, unlawfully, knowingly and feloniously enter and write in said record 'Paid on indebtedness $500;' that in truth and fact no $500 payment on indebtedness was made and said entry was in all respects false and untrue and was then and there known to the said A. P. Omodt to be false and untrue, against the form of the statute," etc.

The rule is well summarized in 3 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 4379. We think the offense defined by the statute is sufficiently charged in the information. See State v. Comfort, 22 Minn. 271; State v. Greenwood, 76 Minn. 211, 78 N. W. 1042, 1117, 77 A. S. R. 632; also the many cases cited under the mentioned section in Dunnell's Digest.

■ It is also claimed that the court erred in permitting the state to amend the information. The only change brought about by the amendment was to substitute in place of the words "Paid on indebtedness $500" the words "Houston State Bank on note $500," which is in conformity with the actual entry. We do not think there is any just reason for criticism of the court's conduct in allowing this amendment. Defendant requested that the case be permitted to go over the term. This the trial court denied but stated that time would be granted so as to enable defendant to make additional preparation if he thought such necessary. The defendant instead of doing so elected to stand trial without taking such additional time. Further to be noted, there had been a preliminary hearing. The state's proof was there disclosed, and defendant knew

just what the proof was upon which the state relied. The record leaves no doubt that he was thoroughly acquainted with the issues to be met. There is no suggestion that he was deprived or in any way hampered in finding and producing every item of evidence existing. We find no abuse of discretion. There is no longer any doubt as to the authority of the court to permit amendments of the type here involved. 2 Mason Minn. St. 1927, § 10648; State v. Irish, 183 Minn. 49, 235 N. W. 625; State v. Heffelfinger, 197 Minn. 173, 266 N. W. 751.

■ Defendant also claims error in that the court refused to dismiss when the state rested. It is claimed that at that time the evidence did not justify a verdict of conviction. We are not impressed that this is so. Furthermore, in a criminal as well as in a civil case, "a new trial will not be granted for refusal to dismiss when the state rested, if the evidence as finally in warrants the conviction." State v. Baker, 161 Minn. 1, 200 N. W. 815.

■ To characterize defendant's conduct in respect of the making of the alleged false entry the state was permitted to introduce proof of many other transgressions of similar nature. For the state there was abundant proof showing continued and a constantly increasing shortage on defendant's part directly traceable to and connected with his activities in the management of the association's funds. Obviously mere carelessness or negligence in his bookkeeping would not constitute forgery; similarly, if such were made by mistake.

Defendant devotes much space in his brief to the claimed error of the court in permitting proof of "other and distinct and separate offenses." The court's instructions admirably state the purposes and limits of such proof, as the following excerpts therefrom clearly demonstrate:

"The charge upon which this defendant has been tried has to do only with the $500 entry that is designated in the information. He is not being tried for making any other entry, or for committing any other offense. Evidence of any other transactions, and the findings and opinions of expert accountants have been received only for the purpose of characterizing that single $500 entry to help

show whether that entry was made for the purpose of falsifying the records, or whether it was merely the result of ignorance or mistake.

"If you find that the defendant was dishonest in other transactions with the association, and that he made a practice of stealing association funds, then you have a right to conclude that this entry was made for a dishonest purpose.

"But, if you believe that he was merely an incompetent or careless bookkeeper, and that he did not on other occasions withdraw money unless he believed that it rightfully belonged to him, then you have a right to conclude that this $500 entry was not dishonest either. * * *

"If the $500 entry was merely the result of ignorance or carelessness on the part of the defendant, then the defendant is not guilty of forgery. But if it was made intentionally for the purpose of falsifying the records so as to cover up the true nature of the transaction, or so as to cover up any other transaction, then it constitutes forgery.

"The defendant claims that the entry was true and correct on the day it was made, but that it afterwards became incorrect because he never delivered the $500 check to the bank. That he withdrew a like amount to apply on an indebtedness from the creamery association to himself, and that he forgot to correct or offset the entry in the books. You will have to determine from the evidence whether or not this explanation is true."

And the court repeated that "an honest mistake is not forgery, and a careless system of bookkeeping is not forgery either. The question is whether the defendant used this entry with the intent to conceal or cover up the true nature of the transaction."

Our cases sustain the trial court's ruling and instructions on this phase. The rule seems to be well established that the commission of other crimes is admissible if it tends directly or corroboratively to prove a guilty intent of the commission of the wrong charged in the information or some essential element thereof. See 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 2459, and cases there cited. In State v. Bourne, 86 Minn. 426, 90 N. W. 1105, the trial court permitted evidence of this type showing offenses of a similar

character to the one for which the defendant was on trial covering a period both before and after the specific act complained of. On appeal there was affirmance. We think the rule there applied is also applicable to the instant case. The state showed a continuous and increasing shortage, indicating a criminal purpose in making the entry in question. The many irregularities, falsifications, and manipulations all had a tendency to establish criminal intent on defendant's part in making this entry.

■ Numerous errors are assigned in respect of rulings on the admission of evidence and the extent of cross-examination permitted of the state's witnesses. It is sufficient to say that a careful reading of the record leaves no doubt in our minds that the court was well within the exercise of its judicial discretion in making the rulings complained of. That cross-examination and the extent thereof rests in the sound discretion of the trial court is well established. We do not reverse except for a clear abuse of discretion. See 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 10318, and cases there cited.

■ Some claim is made that a proper foundation was not laid for the introduction of the state's exhibits. We have examined the record in respect of these and can find no reversible error. See American Bridge Co. v. Honstain, 113 Minn. 16, 128 N. W. 1014; Young v. Yeates, 161 Minn. 278, 201 N. W. 421.

■ A careful review of the record leads to the same conclusion as that reached by the trial judge: "The court is impressed with the fact that the evidence as a whole indicates very strongly that the defendant's general course of conduct was fraudulent and dishonest, and that these explanations are incredible and very flimsy, it seems to me, and I feel that the verdict was a right one, and I do not see how the jury would have been justified in rendering any other."

Order affirmed.