# STATE v. MERLE C. TRAVER.[1]

October 30, 1936.

No. 31,069.

*M. J. Hegland,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *Robert J. Knutson,* County Attorney, for the State.

I. M. OLSEN, JUSTICE.

Defendant was convicted of the crime of driving an automobile on the public highway while under the influence of intoxicating liquor, and appeals from an order denying his motion for a new trial and from the judgment of conviction.

■ The first ground assigned and urged for the reversal of the order is that the court erred in denying defendant's motion for a dismissal of the action at the close of the evidence presented by the state before any evidence was introduced by the defendant. The ground of such motion was that the state had failed to prove the crime charged. Defendant did not elect to rest and stand upon the

[1]Reported in 269 N. W. 393.

evidence presented up to that stage of the trial, but, after denial of his motion to dismiss, proceeded to introduce his evidence, and thereby further evidence as to the issue was introduced by testimony on the part of the defendant and his witnesses and cross-examination of the defendant and his witnesses by the county attorney. It is sufficient to say as to this assigned error that a denial of a motion to dismiss at the close of the state's case on the ground of the lack of sufficient evidence to convict at that stage of the trial is unavailing and not a ground for reversal if evidence sufficient to sustain the verdict or decision is received at any stage of the trial. In other words, if after denial of his motion to dismiss defendant elects to proceed further and present evidence on the issue or issues and further evidence is received, whether by defendant's witnesses or by the state, the question of the sufficiency of the evidence to sustain the verdict or decision is then to be determined on appeal by a consideration of all the evidence presented in the case. State v. Baker, 161 Minn. 1, 200 N. W. 815; Enterprise Co. v. Pfeifer, 169 Minn. 457, 211 N. W. 673; Carr v. W. T. Grant Co. 188 Minn. 216, 246 N. W. 743.

■ The only other question presented is whether the evidence in the case, taken as a whole, is sufficient to sustain the verdict finding the defendant guilty. As usual in these cases, an automobile accident enters into the picture. This was on a Sunday, September 1, 1935. Defendant, an unmarried man about 40 years of age, resided at Baudette, Minnesota. He was employed in the custom service there and had been so employed about ten years. On this Sunday he was visiting at the home of Mr. and Mrs. Iverson at Badger, Minnesota. In the afternoon defendant drove from Badger to Greenbush, accompanied by Eva Iverson, a daughter of the Iversons, and Mr. and Mrs. Alley. Mrs. Alley was also a daughter of the Iversons. At Greenbush the parties visited at the home of the Harpers. They drove back to Badger in the afternoon, arriving at the Iverson home about 3:30 or 4 o'clock. Mr. and Mrs. Iverson, a daughter, and one Ronald Parr were away on a trip to Thief River Falls during the afternoon and returned home about 7 or 7:30 o'clock that evening. Between 9 and 9:30 o'clock, defendant,

Mr. Iverson, Eva, and Ronald Parr started to drive back to Greenbush to say good-bye to Janet, another Iverson daughter, who was leaving for Fargo. Defendant did the driving and the car belonged to him. About a mile and a half or more out of Badger, defendant collided, head on, with a car driven by one Berringer, coming toward Badger from Greenbush. The road between the two places runs in a southwesterly and northeasterly direction. Speaking generally, it is near enough to say that defendant was driving west, and Berringer coming east, on the highway. The road is a state highway. It had, at the time, as we gather from the evidence, an oiled gravel surface, but was dry and not slippery. It was of ample width for cars to pass each other. It was straight and level for at least half a mile east of the place of the accident and for a greater distance to the west. The lights on the cars were on and in good condition. The defendant saw the lights of the Berringer car when it was a mile or so away and saw it coming from then on until the collision. The Berringer car was well over on its own side of the highway with the outer wheels close to the edge of the road. In that situation, the defendant's car struck the Berringer car head on in such a way that defendant's car overlapped one-half of the other car up to the center of the front thereof. Defendant, sitting in the driver's seat, was directly in front of the left-hand light and the left half of the Berringer car when the collision occurred. Without any explanation or excuse on defendant's part, the manner in which the accident happened has some bearing on the issue of defendant's condition as to intoxication at the time. Defendant, when asked by his counsel as to where he was driving in reference to the road, answered: "I would say I was in the center of the road." Asked if he could account for the collision, he answered: "By golly, I can't. All I know is that we hit. That is about all I know."

On the question of intoxicating liquor, defendant frankly admitted that he had been drinking liquor during that afternoon and up to about 7:30 that evening. He testified that he had one drink at the Harper home between 2 and 3 o'clock; two drinks at the Iverson home sometime after 3:30 in the afternoon; and "I think

we had another just before they came back about 7 o'clock," referring to the time Mr. and Mrs. Iverson returned from Thief River Falls. He had one more drink after the Iversons came back, around 7 or 7:30 o'clock. These drinks were all what he termed "highballs," consisting of whisky mixed with some fruit juice or soft-drink. Defendant further testified that he had a bottle of intoxicating liquor in his pocket at the time of the accident. Two disinterested witnesses, who came to the place of the accident just after it happened, testified that they smelled liquor on the defendant and in the car. Others testified that there was a strong odor of liquor from inside defendant's car as they looked into it, the car door being then open. Several witnesses testified, as to defendant's walk and actions at that time, that he walked at and around the car in an unsteady and wobbling way; that he was cursing and using rough language and told some of them to get away from the car; that he tried to prevent some of them from helping to take Eva Iverson out of the car, she being seriously injured and lying partly on the seat and partly on the floor of the car. In that connection it should be stated that defendant also suffered from cuts and bruises on his head and body. However, he was able to get out of the car unaided and walk around, as stated. No doctor who treated the injured persons was called as a witness. A doctor who had not treated or examined the defendant was called as an expert witness for defendant, and, basing his opinion on defendant's own testimony, testified that in his opinion defendant's condition and actions immediately after the accident were caused by a severe blow on his head, causing some concussion of the brain and resulting in temporary confusion or unconsciousness, and were not caused by intoxication.

Defendant's evidence as to good character was properly submitted to the jury.

The conclusion reached is that the evidence sustains the verdict.

The order and judgment appealed from are affirmed.