## STATE v. A. L. HOKENSON.[1]

October 10, 1941.

No. 32,072.

*Samuel P. Halpern, Samuel A. Halpern,* and *Louis B. Schwartz,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, and *Edward L. Rogers,* County Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Convicted of the offense of grand larceny in the second degree (Mason St. 1927, §§ 10358[2] and 10363[1]), defendant appeals from an order denying his motion for new trial.

[1]Reported in 300 N. W. 193.

The facts upon which the prosecution rests are these: Defendant, a lawyer of many years' experience, admitted to practice in June 1917, engaged in the practice of his profession at Cass Lake in the early part of 1937. In July 1937 one Robert Parker was injured while employed by a lumber company. Defendant was retained by Parker to proceed under the workmen's compensation act against the company and its insurer for compensation and medical expenses. That controversy was adjusted by the parties and a stipulation made under the terms of which the insurance carrier agreed to pay $1,000 in full and final settlement of all claims arising out of Parker's accidental injury. The industrial commission, on April 1, 1938, approved the settlement and directed that out of it defendant should receive $150 as his professional fees. On April 6, defendant, Parker, his wife, and one McDonald drove to the insurer's office at Duluth to collect the agreed sum. Two checks were issued there, one payable to defendant for $150, the other to Parker for $850. Defendant's check was cashed. Parker's was given to defendant but not cashed until the parties met at defendant's office the next day. Parker testified that $259, the full amount of the doctor bill, was turned over to defendant out of the proceeds of the $850 check, to be so used. The representative of the insurance company testified that when these checks were issued and delivered at the company's office defendant promised that he would see to it that the doctor bill was paid out of that check.

Long prior to the settlement, the doctor had conferred with defendant with regard to the progress being made in the compensation case. Time and again after defendant had received the money he told the doctor that the matter was still pending. Some six weeks after the settlement had been reached and the money paid, the doctor wrote the insurance company and received a letter, a copy of which was sent defendant, stating that the settlement had been made and the money paid. Confronted with this letter, defendant admitted the facts therein stated, and promised that he

would pay this sum in a few days. Later, stalling for time, defendant told the doctor again and again that his bill would be paid, but nothing came of these promises. Parker, too, upon ascertaining that the doctor bill had not been paid, called upon defendant and asked him about it. Defendant told Parker that the reason for delay was due to a pending deal which did not go through but that he was going to pay the bill. Criminal proceedings being threatened and a complaint to the board of law examiners having been filed, defendant, on August 6, 1938, wrote Parker, who had gone to Wisconsin, among other things, as follows:

"Dear Bob and Georgiana:

"Please let me know all that you have told Dr. Campbell about his bill as he has taken this matter up with the state board and I must answer the charges right soon. *If you will stick to the story that you got the money and that you just have not paid Dr. Campbell because his bill was too high I will see to it that you get all this money into your hands in a short while.* Please let me know just how much you have stated to him and stick by me and I am sure you will not be sorry. Write to me right away." (Italics supplied.)

Again, on August 25, he wrote Parker as follows:

"Dear Bob:

"I will not need you for this [the preliminary] hearing as the only way they can prove a case against me is by having you turn against me. I hope can trust you and believe I can. Thanks for the affidavit you gave me which I sent to the Bar Association."

After rendition of verdict and during the examination of defendant prior to pronouncement of sentence, defendant stated: "I believe under the circumstances in this case that a probationary sentence is warranted."

After the criminal complaint had been filed and prior to the hearings, defendant asked Parker to burn the letters which defendant had sent him. There are other facts which might be stated,

but we think enough has been recited to give a comprehensive picture of the situation.

Defendant claims: (1) "That the verdict is not warranted by the evidence"; (2) "that the court erred in refusing to grant defendant's motion for dismissal at the completion of the state's testimony"; (3) "* * * in refusing to grant defendant's motion for dismissal at the conclusion of said trial"; and (4) that there was error in refusing to grant his "motion requesting that the verdict be set aside or in the alternative that defendant be granted a new trial."

■ That the verdict is warranted by the evidence we think is clearly established from the facts recited. While the money came lawfully into the possession of defendant, the subsequent acts on his part warranted the jury in finding that defendant fraudulently appropriated the money to his own use. We think the rule laid down in State v. Baumhager, 28 Minn. 226, 231, 9 N. W. 704, 706, fits the present situation. The court there said:

"The distinction must be kept in view between the offence and the evidence of it. The first possession being lawful, the act of embezzlement consists, in a certain sense, in a mere act of the mind, without any outward and visible trespass, as in the case of ordinary larceny. *That this mental act of fraudulent appropriation has taken place has to be inferred from the conduct of the defendant.* * * * The usual evidence given of embezzlement is that, *having received the money, the defendant denied the receipt of it, or did not account for it when he ought,* or accounted for other moneys received by him at the same time or afterwards, and not for it, or rendered a false account, *or practised some other deceit, from which the jury may fairly infer that the defendant either actually disposed of the money to his own use,* or withheld it with intent to do so and to defraud the owner." (Italics supplied.)

See also State v. Dahlstrom, 162 Minn. 76, 202 N. W. 151.

The second and third assignments may easily be disposed of since we have held in several cases that in criminal cases "a new trial will not be granted for refusal to dismiss when the state rested, if the evidence as finally in warrants the conviction." State v. Baker, 161 Minn. 1, 200 N. W. 815; State v. Omodt, 198 Minn. 165, 170, 269 N. W. 360; State v. Traver, 198 Minn. 237, 269 N. W. 393; State v. Pehrson, 205 Minn. 573, 575, 576, 287 N. W. 313, 123 A. L. R. 1045.

Obviously the fourth assignment presents no problem requiring discussion.

Order affirmed.