## STATE v. GEORGE A. POLK.

116 N. W. (2d) 540.

July 13, 1962—No. 38,158.

*George A. Polk,* pro se, for relator.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Harlan M. Goulett* and *Philip J. Bloedel,* Assistant County Attorneys, for respondent.

OTIS, JUSTICE.

The defendant, George A. Polk, and an accomplice, one Robert Whitman, were charged and convicted of forgery in the second degree in the District Court of Hennepin County. Whitman pleaded guilty to the offense and was placed on probation. Defendant was found guilty after a jury trial and on March 8, 1960, was sentenced to the State Reformatory for a term not to exceed 10 years. A writ of error having issued, defendant's conviction is here for review.

The facts which the jury was warranted in finding are these: On Saturday night, January 23, 1960, one Maurice Strouts visited the Dugout Bar in the city of Minneapolis and remained there from about 11:30 in the evening until closing time. That evening Mr. Strouts had on his person four American Express Company travelers checks, each in the sum of $50, which the following morning he discovered were missing.

On the same Saturday evening defendant, in company with one Donald Futhey, also visited the Dugout Bar from about 11:30 p.m. until 1 a.m. and thereafter reached Futhey's apartment at 1328 Bryant Avenue North around 6 a.m. Sunday. At about 1:30 that afternoon appellant and Whitman discussed in the presence of one Norman Sehm

and Futhey plans to dispose of the checks which Strouts had had in his possession the previous evening.

Sometime between 1:30 and 2 that afternoon, appellant and Whitman purchased groceries from one William Aagaard at 925 Plymouth Avenue and presented one of the travelers checks in payment. Mr. Aagaard was suspicious of the dissimilarity in the countersignature and refused to accept the check although Whitman had previously been a customer. At about 4 p.m. appellant and Whitman walked into an Erickson service station at 1526 Lyndale Avenue North, stated they were out of gas, and secured a can of gasoline for which they presented one of the $50 travelers checks. The attendant at first refused to cash it but finally relented, and after holding out a deposit for the can and the cost of the gasoline, paid appellant and Whitman the balance in cash. Appellant and Whitman then apparently proceeded to a drugstore at 1028 Plymouth, across from the Erickson station, and appellant attempted unsuccessfully to negotiate a second travelers check for $50. Thereafter, between 4 and 5 p.m., Polk and Whitman approached the attendant of a Standard Oil station at 1200 Plymouth Avenue and, employing the same ruse as that successfully used at the Erickson station, asked the attendant to accept a travelers check for $50, which he refused to do. While still on the premises Polk and Whitman were apprehended by the police and taken in separate squad cars to headquarters. However, the authorities were apparently not then aware of the check which had been passed at the Erickson station. It appears from the record that on arriving at the station the police found the three uncashed travelers checks belonging to Strouts in one of the squad cars. Upon being questioned the two suspects were released, whereupon they returned to the Erickson station and attempted to redeem with cash the travelers check they had earlier presented. Having meanwhile discovered the forgery, the Erickson attendant asked the manager to call the police, and Polk and Whitman were again apprehended.

According to the testimony of Strouts, he had not countersigned any of the checks in question, and the signatures which purported to be his were forged.

Whitman was called by the defendant as his witness and testified

that on one of the checks Norman Sehm filled in the name of Maurice Strouts on the line designated for the payee and that he, Whitman, forged Strouts' countersignature. On cross-examination, Whitman stated that it was Polk who first secured possession of the checks and Polk who suggested passing them. He further testified that out of the cash realized at the Erickson station, Sehm received $15 and gave Whitman $5, while Polk retained the balance.

■ Defendant assigns as error the fact that in a supplemental charge to the jury the court in amplifying his instructions on corroboration referred to "George" Whitman as an accomplice. The court was obviously referring to "Robert" Whitman, and it is difficult to see how any prejudice resulted. The court's slip of the tongue was not called to his attention, no exception was taken, and the matter was not raised in the defendant's motion for a new trial. Under such circumstances we hold that objection to what was merely an inadvertence is deemed waived. State v. Billington, 241 Minn. 418, 427, 63 N. W. (2d) 387, 392.

■ Defendant's second assignment of error is the court's refusal to give two requested instructions, one covering criminal intent and the other dealing with "aiding and abetting." The court gave the jury the substance of Minn. St. 620.10, defining forgery in the second degree, and § 620.19, having to do with uttering a forged instrument, both of which sections require criminal intent as an element of the offense. The statutory definition of a principal set forth in § 610.12, was also read. In addition, the court in words of its own choosing accurately and appropriately instructed the jury on what constitutes aiding and abetting and on the necessity for the state's proving criminal intent beyond a reasonable doubt.

We hold that it was not error to refuse the instructions in the form presented.

The court is not required to charge in the exact language requested if the instructions as given correctly set forth the applicable law. Markle v. Haase, 245 Minn. 520, 527, 73 N. W. (2d) 362, 366; State v. Brady, 244 Minn. 455, 464, 70 N. W. (2d) 449, 454; State v. Becker, 231 Minn. 174, 181, 42 N. W. (2d) 704, 709.

■ While the court correctly charged on the necessity for cor-

roboration of the testimony of an accomplice as required by § 634.04, the rule given was related only to the testimony of Whitman. Appellant assigns as error the court's failure to specifically admonish the jury with respect to the necessity for corroboration of the testimony of Sehm and Futhey. We find nothing in the record to justify the jury's finding Futhey was an accomplice. However, with respect to Sehm there was evidence that he received part of the proceeds knowing them to be realized from a forgery, and that he wrote the payee's name on the check which was negotiated. In the instructions the court did point out that there was testimony implicating Sehm, and he gave a correct definition of an accomplice. Under the circumstances there was no error in failing to mention Sehm specifically. State v. Hurst, 153 Minn. 525, 535, 193 N. W. 680, 683. No exception was taken by defendant to the instruction and no reference was made to it in the motion for a new trial. Thus the matter is, in any event, governed by the rule we applied in State v. Keaton, 258 Minn. 359, 365, 104 N. W. (2d) 650, 655, where we stated:

"Whether the giving of an erroneous instruction constitutes prejudicial error must, of course, be determined upon the facts of each particular case. The defendant here made no objection nor did he take any exception to the instruction at the time of trial. Neither did he raise the error in his motion for a new trial. Under such circumstances a new trial cannot be granted unless it is shown that the error was one of fundamental law or controlling principle and that it substantially and materially prejudiced the defendant's rights."

See, also, State v. Jatal, 152 Minn. 262, 266, 188 N. W. 284, 285.

■  Defendant further assigns as error the fact that the court received in evidence testimony relating to his other attempts to negotiate the forged checks, together with the checks themselves and a letter marked state's exhibit E. While the materiality of the letter is not clear, there is nothing in it which implicates or incriminates defendant, and it appears to have been written some 5 months prior to the offense. With respect to the admissibility of evidence of other attempts and the receipt of the other checks, manifestly there was no error. Under well-established principles this evidence was competent to support

the state's contention that the offense with which defendant was charged was part of a continuous course of conduct or common scheme. The rule in Minnesota, as applied in State v. Rose, 70 Minn. 403, 412, 73 N. W. 177, 179, is this:

"On the trial of a person charged with uttering, publishing and putting off as true a false or forged instrument, and for the purpose of bringing home to the defendant a knowledge of the false and forged character of the instrument there involved, and to fix upon him a criminal intent, other instruments found in his possession or passed by him about the same time may be introduced in evidence upon proof that they are also false, forged and fraudulent."

In State v. Bourne, 86 Minn. 426, 90 N. W. 1105, we pointed out that evidence of similar acts had a tendency to prove that the specific act was committed with unlawful intent and was not done merely out of ignorance or mistake. To the same effect is State v. Omodt, 198 Minn. 165, 269 N. W. 360, and State v. Stuart, 203. Minn. 301, 281 N. W. 299. More recently in approving the introduction of other forged checks we summarized the rule in State v. Bock, 229 Minn. 449, 454, 39 N. W. (2d) 887, 890, (reversed on other grounds) as follows:

"It is a general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person charged with having committed a crime. But to this rule there are several well-established exceptions. * * * Such evidence is also admissible to show a common system, scheme, or plan embracing the crime charged."

In the instant case the court gave the jury a cautionary charge which correctly stated the rule based on the authorities cited.

■ The final assignment of error presents a more troublesome question but does not, in our opinion, constitute grounds for reversal. It appears from the affidavit of counsel in support of his motion for a new trial, that at the voir dire, one of the jurors, one Duane N. Mauch, in answer to counsel's interrogation stated as his occupation that he was a claims man for the Commodity Credit Corporation. On further examination he advised counsel that his duties did not bring

him into court or into frequent contact with lawyers. He was not specifically asked whether he was a member of the bar. He failed to volunteer the information that he was admitted to practice as an attorney at law in the State of North Dakota. The defendant complains that had he known Mr. Mauch's occupation he would have exercised a peremptory challenge, and that it was prejudicial as a matter of law to expose the other jurors to the influence of a member of the legal profession in the jury room. Defendant suggests that the jurors were governed by Mr. Mauch's interpretation of the court's charge with respect to the status of an accomplice. Having in mind the well-settled rule that in the absence of misconduct a verdict may not be impeached by evidence of what transpired during the jury's deliberations,[1] we hold that defendant has shown no prejudice in having a lawyer on the jury and was not thereby deprived of a fair trial. We do not necessarily condone the juror's lack of candor. Clearly it was his duty as a member of the legal profession to disclose at once the fact that he was admitted to the practice of law, even though he may not have been engaged in the usual activities of a lawyer at the time he was called for jury duty and was not apparently a member of the Minnesota bar. Whether rightly or wrongly apprehensive, brothers in the profession are reluctant to retain fellow lawyers on their juries. It is their almost universal practice to exercise a peremptory challenge under such circumstances. In the instant case there is no evidence that Mr. Mauch misrepresented the facts or withheld any information from counsel. While we feel that a high sense of professional responsibility should have prompted Mr. Mauch to disclose voluntarily his legal background and that as a lawyer he may have acted incorrectly, we are of the opinion that he was not guilty of any prejudicial misconduct in his capacity as a juror. Under Minnesota law attorneys are not disqualified from acting as jurors. §§ 593.04, 628.43, 628.54, 631.26 to 631.33. Their exemption is not a cause for challenge but a personal privilege. § 631.33.

In considering a criminal appeal based on the fact that one of the jurors was not a citizen, Mr. Justice Mitchell stated the law on this

---

[1]State, by Lord, v. Hayden Miller Co. 263 Minn. 29, 116 N. W. (2d) 535.

subject in State v. Durnam, 73 Minn. 150, 160, 75 N. W. 1127, 1129, as follows:

"The doctrine is as old as the common law that no objection could be taken to any incompetency of a juror after he was accepted and sworn. * * * even if not discovered until after verdict, the cause of challenge will not per se constitute ground for a new trial. In such case only the discretion of the court can be appealed to, which will consider the nature of the objection to the juror, what diligence the party exercised to ascertain the fact in due time, and the other circumstances of the case. * * *

"* * * We think it is a matter addressed to the sound judicial discretion of the trial judge, who should take all the circumstances above referred to into consideration.

"* * * *The disqualification by reason of alienage is one which does not go to either the intelligence or the impartiality of a proposed juror."* (Italics supplied.)

Here, as in the Durnam case, the status of the juror did not reflect on his intelligence or impartiality. A similar problem arose in Pennsylvania where the court reached a conclusion in harmony with our decision here. Commonwealth v. Kopitsko, 177 Pa. Super. 161, 110 A. (2d) 745. There the appellant was also convicted of a crime and assigned as error the fact that one of the jurors was an attorney whose occupation on the jury list was shown only as "insurance." In that jurisdiction attorneys are not called for jury duty. However, the court pointed out that attorneys are not thereby ineligible for jury service and their absence is not a reflection on their capacity, integrity, or impartiality, but merely expresses a legislative intent to permit an uninterrupted continuation of their professional duties as a matter of public policy. That court stated (177 Pa. Super. 163, 110 A. [2d] 746):

"* * * Such exemption is a privilege for the benefit of the exempted class and not for that of the litigants."

In that case, as in this, counsel for defendant did not go into the juror's educational background and was not misled or deceived by his

answers. The court held that the defendant had not been prejudiced. We reach the same conclusion.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the submission, took no part in the consideration or decision of this case.